## MORROW v. WIPF, Secretary of State.

A statute will not be declared unconstitutional unless it so plainly and palpably conflicts with some principle of oragnic law as to leave no rational doubt of its invalidity.

That a part of a statute is unconstitutional does not authorize the court to adjudge the remainder void, unless the provisions are so inter-dependent that one cannot operate without the other, or so related as to preclude the supposition that the legislature would have passed one without the other, and where the remainder is complete in itself, capable of execution in accordance with the apparent legislative intent, the remainder will be sustained.

The primary election law (Sess. Laws 1907, p. 298, c. 139, § 33), providing that a voter at a primary may be challenged on the ground that he is not in good faith a member of the party whose ticket he requests to vote, and requiring such voter, on being challenged, to swear that he is in good faith a member of the party, and that he intends to support the principles thereof and the candidates nominated at the primary, is valid as a reasonable regulation calculated to conserve the purposes sought to be accomplished by the statute, and does not preclude a first voter from joining the party of his choice, nor prohibit one who has previously voted from transferring his party allegiance, and does not conflict with the constitution in that it adds to the qualifications of electors prescribed by the constitution.

The qualifications of an elector, as defined by the constitution, are, for the purposes contemplated by the provisions relating to the elective franchise, exclusive and conclusive, and no valid law can be enacted on any subject or for any purpose which deprives the elector of substantial rights under such provisions.

Const. art. 3, § 21, providing that no law shall embrace more than one subject which shall be expressed in its title, must be liberally construed so as not to limit legislative enactments any more than is necessary, and, when the title of an act expresses a general subject or purpose which is single, all matters naturally and reasonably included in it, and all measures which will or may facilitate the accompishment of the purpose are germane.

The constitutional requirement that the subject of an act shall be expressed in its title relates to substance, and not to form, and the choice of language is a matter within the discretion of the legislature, and the requirement is satisfied where the title fairly indicates the purpose of the act, and is not calculated to mislead, though it be not the most appropriate that could have been selected.

The title of the primary election law (Sess. Laws 1907, § 285, c. 139), entitled "An Act to provide for the holding of primary elections for the purpose of making party nominations, electing party delegates and committeemen, and establishing rules for regulating the same," fairly indicates that the general subject is the regulation of party nominations and all matters naturally and reasonably included in such subject, and all measures which will or may facilitate the accomplishment of such purpose are germane, and provisions relating to the election of delegates to the July convention, the holding of a convention in July for the selection of candidates for presidential electors, the nomination of candidates for state offices when no one has received sufficient votes at the primaries, and the adoption of a platform, the nomination of candidates for United States senator, the selection of committeemen, the filing of vacancies, and the procedure in cases of dispute as to who has been nominated are properly included in the act.

The provisions of the primary election law (Sess. Laws 1907, p. 308, c. 139, § 71), which prescribes the procedure in cases of dispute as to who has been nominated at a primary, if invalid because of the limitation on the powers of the Supreme Court, do not affect the operation of the other portions of the act.

The elimination of section 4 of the primary election law (Sess. Laws 1907, p. 285, c. 139), providing that the act shall not apply to city, town, township, and school offices, unless adopted at an election held therein, if invalid because not embraced in the title, does not affect the operation of the other provisions thereof.

The title of the primary election law (Sess. Laws 1907, c. 139, p. 285), entitled "An Act to provide for the holding of primary elections for the purpose of making party nominations, electing party delegates and committeemen, and establishing rules for regulating the

same," includes section 64, providing for the issuance of certificates of nomination to successful candidates for elective offices, and directing the printing of their names on the official ballots for the general election; the provision being germane to the title and valid, though they conflict with existing laws covering the same subject.

Const. art. 6, § 18, prohibiting the passage of any law granting to any citizen, class, or corporation privileges or immunities which on the same terms shall not equally belong to all citizens or corporations, requires that every prescribed rule shall have substantially the same operation as to all persons or corporations in substantially the same situation.

The primary election law (Sess. Laws 1907, p. 306, c. 139, § 65), providing that each county shall be entitled to one delegate to each party state convention for every one hundred votes or major fraction thereof cast by such political party in the county for its party candidate for governor at the last preceding general election, etc., is unconstitutional as class legislation, in violation of Const. art. 6, § 18, in that it deprives a political party casting less than 100 votes in a county for its candidate for governor at the preceding election from representation in the convention of the party, and each party in calling its state convention is at liberty to determine the total number of its delegates, apportioning them among the several counties with reference to the vote for its candidate for governor at the last preceding general election.

The invalidity of section 65 of the primary election law (Sess. Laws 1907, p. 306, c. 139), in that it improperly limits delegates to conventions, does not affect the validity of the other portions of the act, as the section may be removed without interfering with the evident purpose of the legislature, or the operation of a complete and effective primary system.

The primary election law (Sess. Laws 1907, p. 306, c. 139, § 67), establishing a method of selecting delegates to national conventions by means of a primary, provided that, when two-thirds of the members of the county central committees of the several political parties of any county at a regularly called meeting shall decide that there is not a sufficient contest over the selection of the delegates to justify the holding of a county convention, the county central committees shall have the power to name the delegates from the county, though only construed as permitting the suspension of the act by the concurrent action of all the committees, each acting independently of the other, and as permitting each committee to appoint delegates to represent the voters of its own party, is invalid as a delegation of legislative power.

The invalidity of section 67 of the primary election law (Sess. Laws of 1907, p. 306, c. 139), relating to the election of delegates to national conventions, does not render the entire enactment inoperative.

The primary election law (Sess. Laws 1907, pp. 290, 291, c. 139,

§ 8, 10), requiring fees from candidates filing nominating petitions, etc., are invalid.

Political parties result from the voluntary association of electors, and do not exist by operation of law, and they possess plenary powers as to their own affairs in the absence of legislative regulation.

Sess. Laws 1907, p. 285, c. 139, providing for the nomination of candidates at a primary election, repealing only such former laws as conflict with its provisions, is not invalid as precluding the formation of new political parties, and any number of electors may organize a new party, and, until they come within the purview of the act by reason of having had a candidate for governor at the last preceding general election, they may certify their nominations in the manner prescribed by Rev. Pol. Code, art. 6, c. 19.

Fuller J., dissenting.

(Opinion filed, April 23, 1908.)

Application for writ of mandamus by Quincy Lee Morrow against D. D. Wipf, secretary of State, to compel defendant to receive and file the certificate of nominations of candidates of the Prohibition Party for state offices. Denied.

*Aubrey Lawrence,* for plaintiff.   *S. W. Clark,* Atty. Gen., for defendant.

HANEY, P. J.   An application for a writ of mandamus commanding the defendant as Secretary of State to receive and file the certificate of nominations of certain candidates of the Prohibition Party for state offices, and to certify the names of such candidates to the auditors of the several counties for the purpose of having them printed on the official ballots to be voted at the coming general election, in accordance with the provisions of article 6, c. 19, Rev. Pol. Code, having been presented, the court, agreeably to the practice heretofore followed in such cases, issued an order directing the defendant to show cause why a peremptory writ should not be granted as prayed by the plaintiff.   In response to this order, the Attorney General appeared specially on behalf of the defendant, and objected to the jurisdiction of the court, on the ground that, as no alternative writ had been issued, the notice given by the order to show cause was insufficient to authorize the granting of a peremptory writ.   It appearing that 10 days' notice had not been given, the court announced that the application would be regarded as one for the issuance of an alternative writ, and that the defendant might offer any objections he desired, or an alter-

native writ would issue returnable at an early date, when the issues involved would be considered. Thereupon the defendant filed a demurrer or statement of objections to the application containing several grounds, only one of which will require attention, namely, that the facts stated do not entitle the plaintiff to any relief whatever, and the questions of law thus presented were ably and exhaustively argued by the counsel of the respective parties.

It appears from the application that the plaintiff is a qualified elector of Brookings county; that he is a member of the Prohibition Party, a duly organized and existing political party, having a state and county organization which has existed for 12 years last past; that such party has for 12 years last past participated in general elections in this state, having its candidates printed on the official ballots voted at such elections; that at the general election of 1906 its candidate for Governor received 3,398 votes; that during the time mentioned such party has held state conventions for the purpose of electing delegates to national conventions, for the purpose of nominating presidential electors and for the purpose of adopting a party platform; that upon due call according to the usages and customs of such party and in accordance with article 6, c. 19, Rev. Pol. Code, a convention for the nomination of candidates for state offices, the selection of delegates to the national convention, and the adoption of a platform was held at Miller, in Hand county, April 7, 1908, composed of duly selected delegates from the various counties of the state; that F. J. Norton was the duly selected chairman, and the plaintiff was the duly selected secretary of such convention; that such convention so organized duly nominated as candidates of the Prohibition Party for state offices to be voted for at the coming general election the persons named in the certificate of nominations, a copy of which is appended to the application; that thereafter the plaintiff, as secretary of such convention, presented such certificate of nominations to the defendant for filing, according to the provisions of the Revised Political Code heretofore mentioned; and that the defendant refused to receive and file the same. In brief, it appears from the application, a mere outline of which has been given, that the Prohibition Party, in making and certifying its nominations, complied in all respects with the provisions of the

Revised Political Code; that the plaintiff was, by reason of his posi-
tion as secretary of its convention, charged with the duty of secur-
ing the filing of its certificates of nominations, to the end that the
names of its candidates might be printed on the official ballots to
be voted at the coming general election, and that it was the duty of
the defendant to receive and file such certificate, provided the law
under which the proceedings of the Prohibition Party were taken
is still in force. Such law is still in force, except in so far as it
conflicts with an act of the last Legislature relating to primaries.
Laws 1907, p. 309, c. 139, § 77; State v. Drexel (Neb.) 105 N W.
174. This is conceded by the plaintiff, but he contends that the later
law is unconstitutional; that an unconstitutional statute is of no
force or effect, and that, therefore, the former law has not been
abrogated. The contention that the former law is still in force if
the later one has no validity is manifestly correct, so the question
arises whether the act of 1907 has any validity whatever. If it has,
plaintiff's application must be denied, as the act of 1907 expressly
provides that hereafter all party nominations, such as were at-
tempted to be made by the Prohibition Party, shall be made in ac-
cordance with its provisions. Laws 1907, p. 286, c. 139, § 3. The
doctrine that a statute will not be declared unconstitutional unless
it so plainly and palpably conflicts with some proiciple of organic
law as to leave no rational doubt of its invalidity, has been fre-
quently approved and followed by this court. Another universally
recognized rule has been stated thus: "The fact that part of a
statute is unconstitutional does not authorize the court to adjudge
the remainder void, unless the provisions are so interdependent
that one cannot operate without the other, or so related in sub-
stance as to preclude the supposition that the Legislature would
have passed one without the other. The question is not whether
valid and invalid portions are closely related in a particular clause
or section, but whether they are essentially and inseparately con-
nected in substance. Where the unobjectionable portion is distinct
and complete in itself and capable of being executed in accordance
with the apparent legislative intent, wholly independent of that
portion which is invalid, the former will be upheld." 6 Am. &
Eng. Ency. Law, 1088. On the same subject this court has said:

"A portion of a statute may be unconstitutional and stricken out, and if that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which is rejected, the statute must be sustained."   State v. Morgan, 2 S. D. 32, 48 N. W. 314.   Having these elementary principles in mind, we proceed to consider plaintiff's objections to the statute in question.

The act provides for the holding of a primary election, at public expense, in every voting precinct in the state, at a time designated therein, to be conducted by judges appointed by the county auditor; printed ballots and a ballot box being furnished for the separate use of each political party.   Each elector offering to vote is required to state in "a distinct and audible voice" his own name, and the name of the party of which he is a member.   Thereupon the judges hand him an official ballot of the party of which he is a member.   He retires to a booth, marks his ballot, returns and delivers it to the judges, who deposit it in the box of the party to which the voter belongs.   If any judge knows or has reason to believe that the person offering to vote is not a qualified voter of the precinct, or is not a member of the party whose ballot he is attempting to vote, it is the duty of the judge to challenge the right of such person to vote, and "any person may challenge the right of any person to vote the ballot of the party making the challenge."   If the challenge be on the ground that the voter is not a qualified elector of the precinct, the judges are required to tender him the oath used at general elections in a similar case.   If the challenge be on the ground that he is not in good faith a member of the party whose ticket he is attempting to vote, he shall be tendered the form of oath prescribed by section 33, which contains, in addition to his qualifications as an elector, these declarations:   "That you are now in good faith a member of the ———— party and a believer in its principles as declared in its platform in the last preceding national and state conventions; and that you do now in good faith intend to support the principles of that party and the candidates nominated by it at the primaries now being held."   If the person challenged refuses to take the oath so tendered, his vote must be rejected.   It is contended that section 33, in so far as it

requires a declaration of present intention to support the candidates nominated by the party whose ballot a challenged elector desires to vote, adds to the qualifications of an elector as prescribed by the Constitution, and is to that extent invalid. The contention is not tenable. It ignores the substantial distinction between the nomination of a candidate and the election of a public officer. Regarding legislative control of party nominations this court has said: "It is for the party to nominate; for the people to elect. The question is not who shall be chosen to any particular public office. That is for the voters of all political parties to determine at the polls. It is simply who shall represent the organization as its nominees, and certainly the determination of that question should be controlled by the action of the party itself; otherwise, party nominations are impossible. To what extent, if at all, the rights of organized political parties should be recognized and regulated by law, is a matter of public policy, to be determined by the legislative department—a matter which does not concern this court. Its duty is done when it gives effect to the legislative will as expressed in statutes which do not conflict with any provision of the federal or state Constitution." State v. Metcalf, 18 S. D. 393, 100 N. W. 923, 67 L. R. A. 331. Undoubtedly the qualifications of an elector as defined by the Constitution, for the purposes contemplated by its provisions relating to the elective franchise, are exclusive and conclusive. Undoubtedly no valid law can be enacted on any subject or for any purpose which deprives the elector of substantial rights under such provisions. Undoubtedly, by reason of the Australian ballot system, which limits the electors choice of candidates to those whose names appear on the official ballot, a relation exists between primary elections and general elections which must not be disregarded. Nevertheless in the application of constitutional provisions relating to such elections as were contemplated by that instrument to such elections as are provided for by this act, the substantial distinction between the choice of a candidate by an organized party and the choice of an officer by the entire electorate must be observed, otherwise the existence of organized political parties, under legislative control, is impossible. Regulation necessarily contemplates and sanctions the continued existence of what is regulated. No law

can regulate what it destroys. Whether it would be wise or constitutional for the Legislature to abolish all organized political parties are questions foreign to the present inquiry. The legislation under discussion was not designed to accomplish that purpose. It was the evident intent of the law-making power to regulate, not to destroy; and, in order to accomplish its purpose, it was absolutely necessary that each party organization be permitted to establish its own rules regarding the qualifications of its members, or that a rule applicable to all be prescribed. This is conceded by the plaintiff and supported by abundant authority. Ladd v. Holmes, 40 Or. 167, 66 Pac. 714, 91 Am. St. Rep. 457; Rouse v. Thompson, 228 Ill. 522, 81 N. E. 1109; State v. Drexel, supra. Indeed, it has been held that a law permitting electors who are not members of a party to participate in the nomination of its candidates is unconstitutional. Britton v. Board, 129 Cal. 337, 61. Pac. 1115, 51 L. R. A. 115. And one of plaintiff's principal objections to the present law rests on the contention that it prevents the formation of new parties. Had the right to determine the qualifications of its own members remained with each political party, each might adopt any test of allegiance it deemed proper in the admission and exclusion of its members, and no one would seriously contend that any constitutional right was invaded or involved. If an elector as such, formerly did not and would not now, in absence of the legislation under discussion, possess a constitutional right to participate in the proceedings of an organized party of which he is not a member, it is difficult to understand how he has been injuriously affected— difficult to understand how any one can be deprived of something he never possessed. There having been no constitutional limitation upon the power of the party with respect to the qualifications of its members, it would seem that if the Legislature has power to legislate on the subject at all its power also is without limitation, so far as concerns the rights of the individual elector. Assuming, however, that legislative regulations regarding qualifications for membership may be questioned by an excluded elector, the test here prescribed is in all respects reasonable and well calculated to conserve the purposes sought to be accomplished by the statute. It does not preclude a first voter from joining the party of his choice;

nor one who has previously voted from transferring his allegiance. It merely permits the exclusion of one who does not in good faith intend to support the principles and candidates of the party in whose proceedings he seeks to participate—something no honorable elector should desire to do.

The act is claimed to be entirely invalid because several of its essential provisions are not embraced by its title. The state Constitution declares: "No law shall embrace more than one subject which shall be expressed in its title." 'Article 3, § 21. "This section of the Constitution was not intended to embarrass the Legislature in the legitimate exercise of its powers by compelling a needless multiplication of bills designed to meet the same object. A liberal interpretation and construction should be given it by the courts so as not to cripple or limit legislative enactments any further than is necessary for the requirements of the law. The ground that an act embraces more than one subject, and that it was not sufficiently expressed in its title, should be grave, and the conflict between the statute and Constitution plain and manifest, before courts will be justified in declaring it unconstitutional and void. When the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably included in it, and all measures which will or may facilitate the accomplishment of the purpose, are germane to its title. The title must express the subject comprehensively enough to include all the provisions in the body of the act. It need not index all its details, but it should indicate the purpose of the Legislature in the enactment." State v. Morgan, supra; Stuart v. Kirley, 12 S. D. 245, 81 N. W. 147; Davenport v. Elrod 20 S. D. 567, 107 N. W. 833. This is the title in question: "An act to provide for the holding of primary elections for the purpose of making party nominations, electing party delegates and committeemen, and establishing rules for regulating the same." In a strict grammatical sense "primary elections" may be the subject expressed, but the language is not to receive a strict grammatical construction. "The requirement that the subject shall be 'expressed' in the title relates to substance, and not to form. The choice of language is a matter within the discretion of the Legislature, and the Constitution is

satisfied if the title fairly indicates the scope and purpose of the act and is not calculated to mislead, although it be not the most appropriate that could have been selected. If a title fairly indicates the general subject of the act, is comprehensive enough in its scope reasonably to cover all the provisions thereof, and is not calculated to mislead either the Legislature or the public, this is a sufficient compliance with the constitutional requirement." 26 Am. & Eng. Ency. Law, 579. The general subject, or purpose of the act, as fairly indicated by the language of the title, is the regulation of party nominations, and all matters which are naturally and reasonably included in such subject and all measures which will or may facilitate the accomplishment of such purpose are germane to its title. State v. Morgan, supra. Such being the established rules relating to the subject in this jurisdiction, it is clear that plaintiff's contention regarding the provisions relating to the election of delegates to the July convention, the holding of a convention in July for the selection of candidates for presidential electors, the nomination of candidates for state offices when no one has received sufficient votes at the primaries and the adoption of a platform, the nomination of candidates for United States senator, the selection of committeemen, and the filling of vacancies, is clearly untenable; all these matters being germane to the general purpose of the legislation. The same may be said of section 71, which prescribes the procedure in cases of dispute as to who has been nominated, though no opinion is expressed as to the validity of the provision making the decision of the circuit court final—a limitation upon the powers of this court which in no manner affects the operation of other portions of the statute. Whether section 4, which provides that the act shall not apply to city, town, township, and school offices unless adopted at an election held therein, is embraced by the title or void for any reason, need not be determined, as the elimination of the entire section would not affect the operation of other portions of the act.

Section 64 provides for the issuing of certificates of nomination to successful candidates for elective offices, and directs the printing of their names on the official ballots to be voted at the general election.,These provisions merely give effect to the purposes of the

act. They are germane to the title, and are valid, even if they conflict with existing laws covering the same subject.

Section 65 contains these provisions: "Each county shall be entitled to one delegate to each party state convention for every one hundred votes or major fraction thereof cast by such political party in said county for its party candidate for Governor at the last preceding general election. The state central committee of each political party shall, at least sixty days prior to the holding of its state convention aforesaid fix the place and hour for holding the same and apportion the delegates to the several counties upon the basis of representation herein provided for, and shall issue and publish a call for such convention in at least five newspapers in the state most likely to give notice to the members for at least sixty days prior to the holding of said convention." So far as this section limits the delegates from each county to one for each 100 votes or major fraction thereof cast by the party in the county for its candidate for Governor at the last preceding general election, the Prohibition Party has just cause for complaint, as it restricts the total number of its delegates to 31, and deprives members of that party in 32 counties of any representation whatever, though votes for the Prohibition candidate for Governor were cast in every county of the state at the last general election. "No law shall be passed granting to any citizen, class of citizens or corporation, privileges or immunities which upon the same terms shall not equally belong to all citizens or corporations." Const. S. D. art. 6, § 18. This requires that every prescribed rule shall have substantially the same operation as to all persons, or corporations, in substantially the same situation. With respect to the privilege of representation the situation of a qualified member of the Prohibition Party in Aurora county (where his party cast 28 votes for its candidate for Governor in 1906) is the same as the situation of a qualified member of the Republican Party in the same county, whose party cast 615 votes for its candidate for Governor. Under the operation of section 65, the Republicans of Aurora county are entitled to be represented by six delegates, while the Prohibitionists are entitled to no representation whatever. A more glaring example of class legislation hardly could be imagined. Possibly the person who

framed the act forgot that there were any political parties in the state other than the one to which he belonged. Notwithstanding this unfair and unconstitutional provision, it does not follow that the entire statute shall fall, as the objectionable feature may be removed without interfering with the evident purpose of the Legislature, or the operation of a complete and effective primary system. Political parties are not creatures of the law. They exist independently of statutes; and have inherent power to regulate their own affairs subject only to such legislative restrictions as have been lawfully enacted. The restriction as to the basis of representation in section 65 is clearly unconstitutional. The law is as if that restriction was not in the statute, and each party in calling its state convention is at liberty to determine the total number of its delegates, but must apportion them among the several counties with reference to the vote for its candidate for Governor at the last preceding general election.

Section 67 attempts to establish a method of selecting delegates to national conventions by means of a primary, county conventions, and a state convention; delegates to the county convention being elected at the primary, and delegates to the state convention being chosen by the county conventions. It contains the following somewhat ambiguous terms: "Provided, that whenever two-thirds of the members of the county central committees of the several political parties of any county at a regularly called meeting shall decide that there is not a sufficient contest over the selection of delegates from such county to the state conventions called to elect delegates to national conventions to justify the expense of holding a county convention, such county central committees shall have the power to name the delegates from said county and the chairman and secretary of the proper committee shall sign the delegate credentials." Were this language given its ordinary meaning and grammatical construction, it would authorize a joint meeting of the central committees of the several parties to suspend the operation of the law, and select delegates to represent each of the parties in its state convention. As suggested by plaintiff's counsel, it would authorize the Republican, Democratic, and Socialist members of the joint meeting to appoint five saloon keepers to represent the

Prohibitionists of Brookings county in the state convention of the Prohibition Party. Of course, it is not conceivable that such was the legislative intent. Probably its purpose was to permit the operation of the statute to be annulled or suspended by the concurrent action of all the committees, each acting independently of the other, and to permit each committee to appoint delegates to represent the voters of its own party after the balance of the section shall have been abrogated. Conceding the latter construction to be the proper one, nevertheless the provision clearly constitutes a delegation of legislative power which cannot be sustained. People v. Board, 221 Ill. 9, 77 N. E. 321; Rouse v. Thompson, supra. However, its removal strengthens rather than weakens the entire enactment, as it is diametrically opposed to the objects sought to be attained by a primary election law, and it sanctions the very evils such a law is designed to remedy. It would, indeed, require the "sublime audacity" of an exceptionally arbitrary "political boss" unhampered by legislative regulations, to do what this provision of the statute expressly authorizes. Its invalidity does not render the entire enactment inoperative or ineffectual for the beneficient purposes the latter was presumably intended to serve. As there is no difference in principle between sections 8 and 10, so far as they relate to the collection of fees for filing nominating petitions, both must fall. Ballinger v. McLaughlin, 22 S. D. —, 116 N. W. 70.

Finally, it is strenuously contended that the act, as a whole, is invalid, for the reason that it precludes the formation of new political parties. Acceptance of plaintiff's construction certainly would give rise to serious difficulties. While interpretation must be reasonable, an interpretation which gives effect is preferred to one which makes void. Rev. Civ. Code, §§ 2440, 2441. Political parties result from the voluntary association of electors. They do not exist by operation of law; and they possess plenary powers as to their own affairs in the absence of legislative regulation. The statute in this instance neither expressly nor by necessary implication forbids the formation of organizations not in existence when it was enacted. It was, as a whole, evidently designed to regulate such organizations as may have had a candidate for Governor at the last preceding general election. By its terms it is not applicable to any

other. By its terms it repeals only such former laws as conflict with its provisions. With respect to nominations not embraced by the latter law the former does not conflict and continues in force. Then any number of electors may organize a new party, and until they come within the purview of the later law, by reason of having had a candidate for Governor at the last preceding general election, they may certify their nominations in the manner prescribed by article 6, c. 19, Rev. Pol. Code.

So we conclude (1) that the statute, as a whole, is not invalid; (2) that each party, through its state committee, may determine the number of delegates to its state convention, basing its apportionment on its vote for Governor at the last preceding general election; (3) that county committees have no authority to dispense with primary elections or to appoint delegates to state conventions; (4) that no fees for filing nominating petitions can be collected; and (5) that the Prohibition Party, having had a candidate for Governor at the last general election, is governed by the law of 1907. It necessarily follows that the plaintiff's application must be denied.

FULLER, J. (dissenting). While my conception of this "government of the people, by the people, and for the people" forces me to differ from my associates in so far as they consider the act within legislative power, I shall direct my attention only to the statutory test of party allegiance and the limitation of the voter's right of choice to the names printed on the official ballot. The oath that every voter may be required to take and by which his political status is determined adds additional qualifications to the constitutional requirements, which have always been held exclusive, and the invasion of his right to choose candidates is an objection which prevades the entire primary scheme, as formulated by the Legislature of this state, and wholly destroys the freedom and equality of the ballot. For self-preservation or the common good "the powers that be" may stand ready to repudiate the latest public declaration of party principles and time and events may have convinced the elector, possessing all the qualifications required by the Constitution of the unfitness or utter depravity of one or more of the numerous candidates for state and county offices, and yet he must swear, if challenged that he intends to support every one of such

candidates together with all the principles of. his party as declared in its last preceding platforms state and national, or be prohibited from casting a ballot at the primary election for the candidates of his choice, and thus, at the very inception of the proceeding to se- lect public servants, he is wholly disfranchised.

Reminiscent of that fondly cherished governmental authority once residing in the people, the erudite unchallenged voter whose observation, study, and reflection have rendered him dissatisfied with some part of the present ticket, or some plank in the previous party platforms, may still idly express his choice for a precinct com- mitteeman and delegates to the county convention by writing their names on the official ballot but this poor boon is burdened with the alternative that he vote for all other candidates whose names are printed on the official ballot, or not vote at all. Thus has the Legislature of this state destroyed that independence of political action assured by the framers of the Constitution, and it would be wholly consonant with present conditions to prefix the words "no longer" to our chosen motto: "Under God The People Rule." From a recent and most exhaustive dissertation by Mr. Mechem devoted exclusively to the various aspects of primary legislation I quote as follows: "Now, the constitutional right to vote in- volves, not merely the right to vote for or against a suggested in- dividual or measure—it involves also the right to propose men or measures, at least so far as the voter's own action is concerned. It it not merely a right to vote for or against the person or plan of some other person's choice, but it involves the right in the voter to take the initiative and to vote for the men and measures of his own choice. It is therefore true, as has often been pointed out, that the right to vote necessarily involves the right to nominate, and that the right to nominate is an essential and inseparable part of the right to vote. The right to nominate, therefore, becomes a constitutional right, and any law which denies to the voter the right to determine for whom he shall vote must be void." 3 Mich. Law Review, p. 367. The impairment and restriction of such con-. stitutional right by the Legislature is a question that seriously con- cerned this court in the case of Chamberlain v. Wood, 15 S. D.

216, 88 N. W. 109, 56 L. R. A. 187, and, being unable to agree with my associates, I filed a dissenting opinion, from which I may be permitted to quote a brief exerpt as follows: "Until all men are viewed in exactly the same light, and the preference of one becomes the preference of all, it will be neither plausible nor reasonable to say the right of suffrage can be freely, equally, and independently exercised under statutes which merely gives to qualified electors an option to vote for persons whose names are printed on the official ballot, or not vote at all; and such is not, and under our system of government can never be, the law. It is manifestly absurd to hold that the elector, who is thus deprived of his privilege of choosing a public servant, stands on equal footing with those who find upon the official ballot the name of every candidate for whom they choose to vote. It is the constitutional prerogative of every qualified elector who has complied with all preliminary statutory regulations as to registration, etc., to vote for whomsoever he may choose; and statutes which deprive him of such right have been, so far as my research extends, invariably held for naught in every jurisdiction with the exception of this."

In 91 Am. St. Rep. pp. 674-688, inclusive, Mr. Freeman, whom I believe to be recognized by the legal profession as an author and text-writer of considerable eminence, has reported the entire case, and criticised the majority opinion at unusual length; and I quote his concluding paragraph as follows: "The foregoing copious extracts from the decisions in various jurisdictions leave little to be said on the question of the right of electors to vote for a candidate whose name is not printed on the official ballot. On principle nothing can be clearer than this right, and nothing can be more subversive of a free ballot than its denial. We have not discovered a single authority, save the principal case, and perhaps Commonwealth v. Reeder, 171 Pa. 505, 33 Atl. 67, 33 L. R. A. 141, that intimates the competency of the Legislature to deny this right. And, as before pointed out, the court in the latter case misconceived the law. We should admire the courage of the South Dakota court in announcing its conclusion in the face of the decisions of the other states, if it were defensible on principle. But regarding it, as we do, to be destructive of one of the greatest institutions yet realized

in the evolution of society, we have no hesitancy in denouncing it as a dangerous precedent." Manifestly chapter 139, p. 285, Laws 1907, requires an unwarranted test oath, and violates the foregoing important rule of action by limiting the elector's right of choice vouchsafed by the Constitution to men and measures proposed by others without his knowledge or consent.

Sustained by every law periodical, text-writer, and well-reasoned decision in the books, I have no inclination to depart from the principles controlling the dissenting opinion in Chamberlain v. Wood, supra, and am confirmed in the belief that the alternative writ of mandamus should be granted.