## BALLINGER v. McLAUGHLIN, County Auditor.

Laws 1907, p. 291, c. 139, § 10, requiring payment of certain fees for filing nominating petitions under the primary election law, which fees are not uniform, and bear no relation to the services performed by the officer who receives the petition, but are to be turned into the public treasury, is an invasion of the constitutional right of a qualified person to become a candidate, and of electors to support the candidate of their choice.

(Opinion filed, April 23, 1908.)

Appeal from Circuit Court, Lawrence County.. Hon. WILLIAM G. RICE, Judge.

Mandamus proceeding by Jesse E. Ballinger against William McLaughlin, county auditor of Lawrence county. From an adverse judgment, plaintiff appeals. Reversed and remanded, with directions.

*Freeman Knowles* and *Robert C. Hayes,* for. appellant.

Unrestricted suffrage is essential to the very existence of popular sovereignty, and on it that sovereignty is based. Let it once be conceded that there is power in the legislature to place restrictions upon the right of franchise, and to determine the reasonableness of those restrictions, then popular sovereignty ends in mere abstraction. Attorney General v. City of Detroit, 58 Mich. 213, 24 N. W. Rep. 887; Johnson v. Grand Forks County, 113 N. W. Rep. p. 1071; Mich. Dapper v. Smith, 101 N. W. 60; Spier v. Baker, 120 Cal. 370; The primary law is an integral and essential part of the election system contemplated by the constitution and the privileges of electors to partake in the primary are under the protection of the constitutional declarations. The primary election is "any election" referred to in Art. 7, Par. 1. The privilege of selecting the candidate is not of less importance than that of voting

for the candidate after nominated. While the primary law was not in existence in most of the states at the time the constitution was adopted, the rulings have been almost uniform that such primary elections were necessarily in contemplation. Spier v. Baker, supra, 41st L. R. A. p. 198; Johnson v. Grand Forks County, supra, 113 N. W. 1073; People v. The Board, 77 N. E. 321; Britton v. The Board, 51st L. R. A. 115. That an additional qualification can be added to those prescribed by the Constitution as a prerequisite to holding public office, has been denied almost uniformly by the courts of those states in which a primary law has been considered. Johnson v. Grand Forks County, supra; Britton v. Board of Commissioners, supra; People v. Board of Election, supra; State v. Drexel, 105 N. W. 174; Dapper v. Smith, 101 N. W. 60; Attorney General v. Detroit, 24 N. W. 887. The provisions by which the candidates are required to buy their way to office are an unwarranted hindrance and impediment to the rights of candidates and voters alike and are illegal and void. People v. Board, 77 N E. 325; State v. Drexel, 105 N. W. 188.

*Robert P. Stewart, State's Atty., and S. W. Clark, Atty. Gen.,* for respondent.

To prescribe an orderly and systematic method by which the people may select their candidates for public office is within the province of the legislature, and apparently the exaction of a fee in filing as a candidate tends to prevent an indiscriminate scramble for offices. Dapper v. Smith, 101 N. W. 60, and Kenebeg v. Allegeny County, 62 Atl. 251; Montgomery v. Chelf, 82 S. W. 390.

HANEY, P. J. The only question presented by this appeal was the validity of section 10, c. 139, p. 291, Laws 1907, requiring the payment of certain fees for filing nominating petitions under the primary election law of 1907. The court, having concluded that the requirement was unconstitutional, and desiring that persons affected might not be deprived of their rights, entered a judgment reversing the judgment of the circuit court, with directions to grant a peremptory writ of mandamus without delaying the proceedings in this court for the purpose of preparing a written opinion.

The reasons for its decision will now be stated. Section 10 is as follows: "Each candidate whose nominating petition must be filed in the office of the county auditor as herein provided, shall, at the time of filing such petition, pay to said auditor the sum hereinafter specified, which shall be paid over by said auditor to the county treasurer and covered into the general fund towards reimbursing the county for expenses incurred in carrying out the provisions of this section. Candidates for party nominations for county treasurer, sheriff, auditor and register of deeds, shall each pay the sum of fifteen dollars. Candidates for party nominations for county judge, state's attorney, clerk of the circuit court and superintendent of schools, shall each pay the sum of ten dollars. Candidates for party nominations for county commissioner, surveyor and coroner, shall each pay the sum of five dollars. Candidates for party nominations for the Legislature, either house, shall each pay the sum of five dollars. Candidates for party nominations for constable, justices of the peace, and for election as delegates to a state convention or member of the state central committee, shall each pay the sum of one dollar." It will be readily conceded that constitutional provisions defining the legal qualifications of electors and candidates for public offices are conclusive and exclusive, and that any legislation which substantially invades or impairs the rights conferred by such provisions cannot be sustained. The right of a qualified person to become a candidate, and the right of a qualified elector to support the candidate of his choice, subject to regulations calculated to conserve such right, is one of a most sacred character. It will also be readily conceded that, where the voter is practically, if not strictly limited to the choice of candidates whose names are lawfully printed upon official ballots as in this state (Chamberlain v. Wood, 15 S. D. 218, 88 N. W. 109), any unauthorized interference with or burden upon the right of making nominations presents a question of serious importance. Where the Legislature has power to act, neither its motives, wisdom, nor usually the reasonableness of its action can be questioned by the courts. If, in connection with the filing of the nominating petitions, the Legislature has power to impose, as a condition precedent, the payment of any sum in excess of a uniform nominal

filing fee, it is difficult to understand how the courts could formu·
late a rule of general application by which they shall be guided in
determining when the required amount is excessive and when it is
not.    Such payments are not calculated to prevent fraud, or to
protect the rights of honest electors or candidates.    In this instance
they bear no relation to the services performed by the officer who
receives the petition.    There is no valid reason why a candidate
for Governor should be required to pay any larger sum for the
privilege of filing his petition than is required of a candidate for
county commissioner.    One, of course, receives a larger salary than
the other; but the compensation of each is presumably measured
by the public service rendered.    The expense incurred by the pub-
lic in conducting a primary election could not be equitably appor-
tioned among the candidates otherwise than by requiring each one
to pay the same sum, and that, in one aspect, would be unjust, for
many candidates have no reasonable chance of being elected.    So
the fee in each case mentioned in section 10 is in effect an arbi-
trary tax upon the privilege of being a candidate for the office to
which it relates.    The court was, when its decision was rendered,
and now is, satisfied that the attempt to impose such a tax is
clearly unconstitutional and void.    In this conclusion it has the
support of abundant authority.    People v. Board, 221 Ill. 9, 77 N.
E. 321; Johnson v. Grand Forks County, 113 N. W. 1071; State
v. Drexel, 105 N. W. 174.

In People v. Board, supra, considering a statute the same as
ours, the court used this language: "These payments bear no re-
lation to the services rendered in filing the papers or the expenses
of the election.    They are purely arbitrary exactions of money, to
be paid into the public treasuries as a monetary consideration for
being permitted to be a candidate.    The payments are not intended
as compensation for services rendered in filing the papers, but the
provisions make the ability and inclination of a person to pay
money a test of his qualification and of the right of the voters to
choose him for public office.    Every eligible person has a right to
be a candidate for a public office without being subject to arbitrary
or unreasonable burdens.    The voters have a right to choose any

eligible person, and he owes a duty to the public to qualify and serve. People v. Williams, 145 Ill. 573, 33 N. E. 849. Reasonable regulations, such as a petition from a proper percentage of voters, which would show that they want the privilege of voting for a person, or other reasonable conditions or restrictions, may be imposed. If there were no such conditions, the ballot might be so large as to be impracticable; but there can be no discrimination between candidates based upon the ground that one has money to pay for the privilege of being a candidate and chooses to pay, and another has not the means, or is unwilling to buy the privilege."

For these reasons the judgment of the circuit court was reversed, and the case remanded, with directions to grant the relief prayed in plaintiff's application for a writ of mandamus.