W. L. TOWNSEN, COUNTY JUDGE, ET AL. v. W. B. MERSFELDER ET AL.

Decided February 22, 1908.

**1.—Injunction—County Seat Election—Political Proceeding.**

The District Courts of this State have no jurisdiction to prevent by injunction the canvassing of the returns and the declaring of the result by the proper officers of an election held to select a county seat; a proceeding instituted for that purpose, even by the persons whose pecuniary interest might be affected by the acts sought to be enjoined, is a political proceeding and not a suit within the ordinary acceptation of that term. The courts can only interfere to protect pecuniary rights after the political questions have been settled.

**2.—County Seat Election—Void Political Act—Injunction.**

On the ground that a certain locality had been previously selected as a county seat at an election held for that purpose, an injunction was sought to restrain the County Judge and other officers from canvassing the votes and declaring the result of a second election in favor of another locality; it appeared on the face of the record and the petition that no place received the necessary majority of votes at the first election and hence that the act of the County Judge in declaring that a certain locality had been chosen was without authority of law and void. Held, that an injunction was improperly granted to restrain the County Judge from declaring the result of the second election.

Appeal from the District Court of Parmer County. Tried below before Hon. J. N. Browning.

*Turner & Boyce* and *J. W. Crudgington,* for appellants.—The holding of an election, canvassing the returns, and declaration of the result thereof is a function of the political department of the government with which a court of equity has no jurisdiction to interfere. Robinson & Watson v. Wingate, 80 S. W., 1067; see also 98 Texas, 267; 10 Am. & Eng. Ency. of Law, p. 816.

A citizen taxpayer and voter in a county has no such interest in the location of the county seat thereof as will enable him to maintain a suit for the purpose of determining the result of an election affecting its location. If in a suit involving a private right or interest it becomes necessary to ascertain the true result of such an election the courts will consider the question and ascertain and declare such results, but will then go no further than is necessary to protect the right or interest in controversy. Robinson & Watson v. Wingate, 80 S. W., 1067; Caruthers v. Harnett, 67 Texas, 127; Caruthers v. Slaughter, 2 S. W., 526; Caruthers v. State, 67 Texas, 132; Harrell v. Lynch, 65 Texas, 146; Walker v. Tarrant Co., 20 Texas, 20; Whittaker v. Dillard, 81 Texas, 364.

The court erred in ordering the issuance of the temporary injunction prayed for by plaintiffs for the reason that plaintiffs' petition fails to show that Parmerton, at the time of ordering the election by the county judge of Parmer County, on November 4, 1907, was the legal county seat of Parmer County, in that said petition does not allege that said town of Parmerton at the first election, held on May 7, 1907, received a majority of all the votes cast by the

electors voting at the election for the county seat, and it is not alleged that the canvass of the returns, as made by the county judge, show such result. Revised Statutes, arts. 809, 810; Caruthers v. Harnett, 67 Texas, 127; Caruthers v. Slaughter, 2 S. W., 526; Caruthers v. State, 67 Texas, 132; Presidio County v. Jeff Davis Co., 77 S. W., 278; Whittaker v. Dillard, 81 Texas, 364; Ewing v. Duncan, 81 Texas, 230; State v. Alcorn, 78 Texas, 387; Dean v. State, 88 Texas, 290.

*Madden & Trulove* and *Knight & Slaton*, for appellees.

STEPHENS, Associate Justice.—This proceeding was instituted by W. B. Mersfelder and several other resident citizens, property holders, voters and taxpayers of Parmer County against the county judge and county commissioners of that county to enjoin the county judge from opening and canvassing the returns and declaring the result of an election held in that county on December 10, 1907, for the location of the county seat of said county, and to restrain all the defendants from "recognizing in any way that said election was legal or valid, and from making or entering any orders, or taking any official steps or doing official acts, recognizing the validity of said pretended election, or that the county seat of said county is at any place other than Parmerton." The temporary injunction was granted, as prayed for, by the district judge in chambers, and from that judgment this appeal is prosecuted.

The facts out of which the controversy arose are thus sufficiently stated in appellants' brief: "On April 9, 1907, the county judge of Deaf Smith County, Texas, organizing Parmer County, which had been theretofore unorganized and attached to Deaf Smith County for judicial purposes, ordered an election to be held in the various voting precincts of said Parmer County, on May 7, 1907, for the purpose of electing county and precinct officers and designating a county seat of said county. Said election was held on May 7, 1907, and returns made to the county judge of said Deaf Smith County; at said election the town of Parmerton received for county seat twenty votes, the town of Bovina nineteen votes, the town of Friona six votes and the town of Farwell four votes. The county judge of Deaf Smith County on May 8, 1907, canvassed such returns and made a tabular statement of the result, as shown by such returns on the record of election returns of Deaf Smith County, the book in which such records were usually kept, which showed the number of votes cast for each of said places at each precinct, and the totals as above stated; opposite the name Parmerton is noted, 'majority vote one.' On May 8, 1907, said county judge issued an order in which he declared that certain officers had been elected to the various offices of said Parmer County, and that Parmerton had been elected the county seat, having received a 'majority vote,' and ordered that due minute of election returns be entered in the record of election returns, and that such order be recorded in the minutes of the Commissioners Court of Deaf Smith County, Texas, which seems to have been done. About June 5, 1907, there was filed in the

District Court of Parmer County a suit contesting the validity of said election, which said contest was dismissed after the order for the second election was made November 4, 1907, as hereinafter referred to. After the entry of the order declaring Parmerton the county seat above referred to, the county seat was maintained at Parmerton; and on June 8, 1907, the Commissioners Court of Parmer County, by order entered on its minutes, directed that all county records be kept at said Parmerton until the location and establishment of the county seat of said county should be finally settled according to law. On November 4, 1907, the county judge of Parmer County ordered an election to be held in said county on December 10, 1907, for the purpose of designating a county seat of said county, which said election was duly held, resulting in the town of Farwell receiving a majority of more than two-thirds of the votes cast at the election."

In the case of Robinson & Watson v. Wingate, 80 S. W., 1067, in an elaborate and well considered opinion by Judge Gill, in which very many, if not all, the previous decisions bearing on the subject were reviewed, the Court of Civil Appeals for the First Supreme Judicial District distinctly held that the District Courts of this State have no jurisdiction to prevent by injunction the publication of the result of a local option election, treating a proceeding instituted for that purpose, even by persons whose pecuniary interests might be affected by the adoption of the law, as a mere political proceeding and not a suit within the ordinary acceptation of that term. This opinion was expressly approved by the Supreme Court. 83 S. W., 182.

The proceeding now before us comes clearly, we think, within that decision, notwithstanding the allegation that "if the county seat of said county is removed from Parmerton to the town of Farwell, the county of Parmer, and the taxpayers thereof, will incur a loss of about $1000 in money occasioned by the loss of the court-house now being erected, and the expense that will necessarily be incurred in moving said county seat and the records, furniture and fixtures belonging to said county, all of which will entail upon the plaintiffs and other taxpayers, great and irreparable injury;" and notwithstanding the further allegation that one of the plaintiffs, Norman Wilson, "is the duly elected and acting treasurer of said county, and now has all the books and records pertaining to said office in his possession at Parmerton, but plaintiffs have good reason to believe, and do believe, that if said returns are opened and canvassed and Farwell is declared to be the county seat of said county, that the Commissioners Court of said county will at once remove, or cause to be removed, to Farwell the books and records pertaining to such office, thus inflicting upon said Wilson, the other plaintiffs and the taxpayers of said county great and irreparable injury, for which they have no adequate remedy unless the defendants be restrained and enjoined from so doing."

The clear and unmistakable meaning of the opinion referred to is that it will be time enough for the courts to interfere by writ of injunction to protect the rights of those threatened with pecuniary

loss after the political question has been settled, which is not done until the result of the election is declared.

We find nothing in this opinion or in the conclusion we have reached, holding it to be applicable to the case before us, in conflict with the decision in Caruthers v. Harnett, 67 Texas, 127. That was a suit by the county treasurer to prevent the immediate removal of his records, books and papers from Fort Davis to Marfa, and in no sense a proceeding to prevent the declaration of the result of a county seat election.

But if it should be held that the court had jurisdiction to grant an injunction, we incline to the opinion that no injunction should have been granted in this instance, because it distinctly appears from the face of the record of the election returns, as canvassed and entered by the county judge of Deaf Smith County, that Parmerton did not receive a majority of the votes cast at the county seat election. The true meaning of the record, read as a whole, would seem to be that the county judge declared Parmerton to be the county seat because it received a majority of one vote over Bovina, its next highest competitor, although it received less than a majority of all the votes cast. In other words, in opening the returns, counting the votes and declaring the result, the county judge made a record which shows on its face, by the facts therein recited, that the election did not result in the selection of any place as the county seat of Parmer County, but nevertheless, in the face of this record, he declared Parmerton to be the county seat. The jurisdiction of the county judge, as a returning officer, to canvass the returns and declare the result was limited and special, and when in the exercise of this power the fact showing that the election had not resulted in the selection of a county seat, was definitely ascertained, it was not within his province to select the county seat by a mere declaration of his own. It was suggested in argument that the County Judge probably made the mistake of supposing that a plurality vote was synonymous with a majority vote; but however this may be, the law provides that a county seat can only be selected by a majority of the votes cast at an election held for that purpose, and does not authorize the county judge by a vote of his own to make the selection, as was in effect done in this instance.

The order granting the injunction will be reversed and the injunction dissolved.

*Reversed and injunction dissolved.*