IRA W. OLIVE, APPELLANT, V. SCHOOL DISTRICT ET AL.,
APPELLEES.

FILED FEBRUARY 26, 1910.  No. 16,481.

Schools and School Districts: ELECTIONS: BONDS. Women entitled to
vote at school elections may lawfully vote for or against school
district bonds.

APPEAL from the district court for Dawson county:
BRUNO O. HOSTETLER, JUDGE. *Affirmed.*

*W. D. Oldham,* for appellant.

*H: D. Rhea, E. A: Cook* and *Warrington & Stewart,*
contra.

ROOT, J.

This action involves the validity of certain school dis-
trict bonds. Defendants prevailed, and plaintiff appeals.

It is conceded by the litigants that the record presents
but one controlling fact for our determination, and that
is whether women may under any circumstances lawfully
vote to authorize a school district to issue bonds. If, as
plaintiff contends, the constitution disqualifies women
from voting at such an election, the judgment of the dis-
trict court should be reversed, otherwise it should be af-
firmed. In 1858 the territorial legislature provided by
suitable legislation for school districts in the various
townships in organized counties. Voters resident in the
respective school districts qualified to vote at the terri-
torial and county elections were authorized to vote at
school district meetings. The districts were not author-
ized to issue bonds. In 1869 the state legislature passed
an act "to establish a system of public instruction for the
state of Nebraska." 2 Complete Session Laws, p. 448
*et seq.* Section 23 of the act provides: "Every inhabitant
of the age of twenty-one years residing in the district, and
liable to pay a school district tax therein, shall be enti-

tled to a vote at any district meeting." Section 30 of the act provided that school districts might borrow not to exceed $5,000 to pay for school sites and the construction of schoolhouses, if authorized by a majority of the qualified voters of the district present at an annual meeting or at a special meeting called for the purpose of voting upon such a proposition. The constitution of 1866 provides that every male person of the age of 21 years or upwards, resident of the state, county and precinct for the time provided by law, and a white citizen of the United States, and every white male person of like age and residence, but of foreign birth, who had declared his intention to become a naturalized citizen of the United States, should be an elector. It will be noticed that the legislature did not refer to the persons entitled to vote at school meetings as electors, but as inhabitants of the district, so that women were recognized as competent to participate in school elections as early as 1869. In *State v. School District,* 13 Neb. 78, it was held that the statute of 1869, *supra,* authorized school districts to not only borrow money, but issue bonds as evidence of the debt thereby incurred. *State v. School District,* 13 Neb. 82; *Orchard v. School District,* 14 Neb. 378.

Section 1, art. VII of the 1875 constitution, provides: "Every male person of the age of twenty-one years or upwards belonging to either of the following classes, who shall have resided in the state six months, and in the county, precinct, or ward for the term provided by law, shall be an elector: *First,* citizens of the United States. *Second,* persons of foreign birth who shall have declared their intention to become citizens conformably to the laws of the United States, on the subject of naturalization, at least thirty days prior to an election." Section 5, art. IX, further provides: "County authorities shall never assess taxes the aggregate of which shall exceed one and a half dollars per one hundred dollars valuation, except for the payment of indebtedness existing at the adoption of this constitution, unless authorized by a vote of the people of

the county." Counsel for plaintiff argues that the constitutional qualifications of electors may not be enlarged or curtailed by legislation; that no person lacking any of these qualifications has the right, or can be given authority by the legislature, to vote for any office created by the constitution, or upon any proposition contemplated by that instrument; that since the county authorities are directed by statutory law to annually levy taxes in the respective school districts within the county to satisfy interest accruing on unpaid school district bonds, to accumulate a fund by such taxation to eventually pay such debts, and no bonded indebtedness may be created without a vote of the qualified electors in the district, such an election is within the scope of these constitutional provisions. The fact that the county authorities, and not the school district officers or the electors in the district, are directed to levy taxes to satisfy bonded debts has no significance in this case. The method provided by law is one of convenience only, and was not enacted to satisfy any constitutional limitation. Section 6, art. VIII of the constitution, directs the legislature to "provide for the free instruction in the common schools of this state of all persons between the ages of five and twenty-one years." Section 4, art. VIII of the constitution, provides that certain gifts, grants and devises, the interest arising on certain funds, rents from unsold school lands, "and such other means as the legislature may provide, shall be exclusively applied to the support and maintenance of common schools in each school district in the state."

In *State v. Walsh*, 31 Neb. 469, we held that the word "means" as used in section 4, art. VIII, *supra*, refers to money arising from annual taxation for school purposes. In *Affholder v. State*, 51 Neb. 91, we held that the constitution vested the legislature with power to provide the funds, and discretion in applying the revenue, necessary to furnish free instruction to the children of the state. There is no provision in the constitution that the legislature or the agencies created by statute for the purpose

of carrying out the mandate of the people shall not provide means for educating the children of school age in the respective school districts, unless the voters resident therein shall have authorized the levy of taxes or the creation of a debt for that purpose. The legislature has, however, with commendable wisdom provided that in rural school districts the electors shall levy local taxes for school purposes, and that a bonded debt shall not be created in any school district unless the qualified voters therein shall have first given their consent thereto at an election.

In 1879 the legislature enacted a general law concerning school district bonds. Laws 1879, p. 170 *et seq.* (Ann. St. 1909, sec. 11318 *et seq.*). Section 11319 directs that no bonds shall be issued until the proposition shall have been submitted to the qualified electors of the district, and two-thirds of such voters present and voting on the question shall have declared by their votes in favor of such bonds, nor shall a bond election be called unless one-third of the qualified electors in the district petition therefor. Chapter 78, laws 1881, is a comprehensive act "to establish a system of public instruction for the state of Nebraska." Section 4, subd. II thereof, provides: "Every voter and every woman who has resided in the district forty days and is over twenty-one years of age and who owns real property in the district shall be entitled to vote at any district meeting. Every voter and every woman who has resided in the district forty days and is over twenty-one years of age and who owns personal property assessed in his or her name at the last assessment shall be entitled to vote at any district meeting. Every voter and every woman who has resided in the district forty days and is over twenty-one years of age and who has children of school age residing in the district shall be entitled to vote at any district meeting." Subsequent amendments to the school law upon this subject do not change the qualifications of such voters. The amendment of 1899 provides that the qualified voters, as aforesaid,

shall be entitled to vote "at any district meeting or school election." Laws 1899, ch. 59, sec. 1 (Ann. St. 1909, sec. 11533). The act of 1879, *supra,* has not been modified in any manner material for an understanding of the instant case. In construing the act of 1881, *supra,* in *State v. Cones,* 15 Neb. 444, it was held that a woman possessing the statutory qualifications might lawfully vote at school district meetings, and hold the office of school trustee. Counsel argues that Judge MAXWELL's opinion, by inference, repels the thought that female electors may vote to authorize the creation of a bonded debt. Judge MAXWELL does say "the statute merely permits women possessing the necessary qualifications to have a voice in the choice of school officers, selection of teachers, and general management of schools", but the point of law presented in the instant case was not involved in the cited one, and Judge MAXWELL's argument does not relate to nor control the subject in controversy here.

The legislature from time to time has enacted statutes for the creation and management of school districts within the various cities of the state, and from the necessities of the case has vested the boards of education with authority to levy a school tax of 20 mills on the dollar valuation on all property in such districts. School levies have been made time and again in excess of 15 mills without first submitting the question to the voters of the district, and yet, if plaintiff's construction of the constitution is to be accepted, the excess over 15 mills of those levies is void. The entire course of legislation is repugnant to the construction plaintiff contends should be given the constitution. To hold as he desires would hamper the administration of the schools of the state, and emasculate article VIII of the fundamental law. The argument does not appeal to us as sound.

The judgment of the district court is right, and is

AFFIRMED.

FAWCETT, J., dissenting.

The majority opinion quotes from chapter 78, laws 1881, which provides that every voter and every woman who has resided in the district 40 days and is over 21 years of age and who owns real property in the district, or who owned personal property in his or her name at the last assessment, or who has children of school age residing in the district, shall be entitled to vote at any district meeting. Reference is also made to the amendment of 1899, which provides that such persons shall be entitled to vote "at any district meeting or school election." The opinion also states that the act of the legislature of 1879 directs "that no bonds shall be issued until the proposition shall have been submitted to the qualified electors of the district, and two-thirds of such voters present and voting on the question shall have declared by their votes in favor of such bonds, nor shall a bond election be called unless one-third of the qualified electors in the district petition therefor." The opinion also states that the act of 1879 "has not been modified in any manner material for an understanding of the instant case." In this latter statement I fully concur. At the January, 1884, term of this court, in *State v. Cones,* 15 Neb. 444, MAXWELL, J., in construing the act of 1881, *supra,* said: "The statute merely permits women possessing the necessary qualifications to have a voice in the choice of school officers, selection of teachers, and general management of schools. And, being entitled to vote, they are also entitled to act as trustees. We have no doubt, therefore, that the act allowing women possessing the qualifications prescribed in the act to vote at school meetings is constitutional and valid." In that construction of the law by the learned judge I fully concur. In speaking of the law as it then stood, the majority opinion states: "Subsequent amendments to the school law upon this subject do not change the qualifications of such voters." In this statement I concur. The opinion further says: "The amendment of 1899 provides that the

qualified voters, as aforesaid, shall be entitled to vote 'at any district meeting or school election' "; and because of the addition of the words "or school election" the majority hold that women possessing the qualifications above set out are entitled to vote at a bond election. In other words, the opinion holds that an election for the issuing of bonds is a school election within the meaning of the law. In this I am unable to concur. To my mind there is a decided distinction between permitting women to vote on certain questions and declaring them to be electors. In the act of 1879, which authorizes an election for the issuance of bonds, the legislature has, to my mind, carefully guarded against all doubt on the subject by providing that no bonds shall be issued until the proposition shall have been submitted "to the *qualified electors* of the district"; and, further, that no such bond election shall be called "unless one-third of the *qualified electors* in the district petition therefor." I think the legislature was carefully drawing the distinction between electors and other persons who might vote on school matters at a district meeting. Section 1, art. VII, const. 1875, declares who shall be an elector, as follows: "Every male person of the age of twenty-one years or upwards belonging to either of the following classes, who shall have resided in the state six months, and in the county, precinct, or ward for the term provided by law, shall be an elector: *First,* citizens of the United States. *Second,* persons of foreign birth who shall have declared their intention to become citizens conformably to the laws of the United States, on the subject of naturalization, at least thirty days prior to an election." Sec. 3, ch. 26, Comp. St. 1909, reaffirms section 1, art. VII of the constitution. The question as to who shall be an elector having been thus definitely settled by both the constitution and the statute above cited, and the legislature having expressly limited the right to vote at an election for the issuance of bonds to qualified electors of the district, I do not think it is within the province of the court to extend that right by construc-

tion so as to permit persons who are not qualified electors under the constitution to vote upon so important a question; nor do I think it can be successfully claimed that a bond election or an election for the issuance of bonds is a school election within the meaning of the law. The law of 1881 granted women the right to vote at any district meeting. The amendment of 1899 gives them the right to vote at any district meeting or school election. I think the purpose of the legislature was to relieve the question of any doubt as to the right of women to vote for the election of school officers. The law of 1881 giving them the right to vote at a district meeting clearly entitled them to vote on the question of selection of teachers and matters pertaining to the general management of schools; but it left the matter in some doubt as to whether they were entitled to vote at a school election for the election of directors. The amendment of 1899 solved that doubt by providing that they might vote not only at district meetings, but also at school elections. I think this was what the legislature had in mind, but do not think that the thought ever entered the mind of any member of the legislature that by that amendment they were practically making women of the class designated electors. The word "elector" has a clear and distinct meaning. It had been defined in the constitution and by the legislature; and, if it had been the purpose of the legislature to make women electors, it would have been a very easy matter to have so stated in express terms. I therefore hold that the rights possessed by women today are the same as declared by MAXWELL, J., in *State v. Cones, supra,* viz.: "To have a voice in the choice of school officers, selection of teachers, and general management of schools. And, being entitled to vote, they are also entitled to act as trustees;" but that they have no other or greater rights.