## A. R. ANDERSON v. CHARLES E. ASHE ET AL.

### Decided October 11, 1910.

**1.—Election—Contest—Validity of Act—Case Distinguished.**

The Act of the Thirty-first Legislature (Gen. Laws, 1909, page 451) conferring jurisdiction on District Courts to hear and determine election contests, is not subject to the objection that it is void because it fails to provide any adequate procedure for the trial of such contests. Odell v. Wharton, 87 Texas, 173, distinguished.

**2.—Same—Application of Common Law—No Pleading—Practice.**

The failure of the Act concerning contests of elections to prescribe rules of evidence and to provide for the filing of pleadings by the contestee, would not render the Act invalid; in such case the provisions of article 2299, Rev. Stats., adopting the common law rules of evidence, would apply in the admission and exclusion of evidence; and the contestee is not required to file any written answer. The contestant must prove his allegations before the declared result of the election will be disturbed.

**3.—Same—Primary Elections—Jurisdiction of District Courts—Constitution.**

The term "contested elections," as used in section 8, article V, of the Constitution, as amended in 1891, includes primary elections as well as final elections, and the District Courts have jurisdiction in the one case as well as in the other to try contests.

**4.—Mandamus—Court of Civil Appeals—Jurisdiction.**

The Courts of Civil Appeals of this State have original jurisdiction to issue a writ of mandamus to compel a District Court to try and render judgment in a cause, and this jurisdiction is not affected by the fact that the cause in which the writ is applied for is one not appealable to the Courts of Civil Appeals.

Original application for mandamus to the District Court of Harris County.

*Lane, Wolters & Storey* and *Fisher, Sears & Campbell,* for relator.

*Presley K. Ewing, John Lovejoy, S. H. Brashear* and *A. C. Van Velzer,* for respondents.

PLEASANTS, CHIEF JUSTICE.—Relator, A. R. Anderson, who was a candidate for nomination for the office of sheriff of Harris County at

the Democratic primary election held in said county on July 23, 1910, has applied to this court for a writ of mandamus to compel the respondent, Charles E. Ashe, who is a judge of a District Court for Harris County, to proceed to hear and determine a contest filed by relator in said court attacking the returns of said election, which show the nomination of respondent, Frank Hammond. The grounds of the contest are fraud and illegality in the election, and the sufficiency of the allegations of the contestant to entitle him to have the returns of the election set aside and himself declared the nominee for said office, is not questioned.

On the day set for the hearing of the contest by the District Court, contestee Hammond appeared and presented exceptions and a plea to the jurisdiction of the court to hear and determine the contest, on the ground, first, that the Act of the Thirty-first Legislature conferring such jurisdiction upon the District Court was unauthorized by the Constitution and therefore void; and second, that if the Constitution conferred, or authorized the Legislature to confer, such jurisdiction the Act mentioned was void because it failed to provide any adequate procedure for the trial of such contest.

The district judge held that the Act was not unconstitutional, but sustained the contention that it was void because it provided no adequate procedure for the trial of the contest, and on this ground refused to hear the contest, and dismissed the proceedings.

We shall treat these questions in inverse order to that in which they are above stated, and will first determine whether the district judge was correct in his holding that the statute was void because it provided no adequate procedure for the trial of the contest.

Section 141 of the Terrell election law, as amended by the Act of the Thirty-first Legislature, is as follows:

"All contests for a primary election or nomination of a convention, based on charges of fraud or illegality in the method of conducting the elections, or fraud or illegality in selecting the delegates to the convention, or in certifying to the convention, or in nominating candidates in State, district, county, precinct or municipal conventions, or in issuing certificates of nominations from such conventions, the same shall be decided by the executive committee of the State, district, or county as the nature of the office may require, each executive committee having control in its own jurisdiction, or by the District Court, or judge of said court in vacation, of the district where the contestee resides, said executive committee and the District Court having concurrent jurisdiction; provided, that where contests are originally filed with the executive committee either party shall have the right to appeal from the final decision of the executive committee to the District Court having jurisdiction, and said contest shall there be tried *de novo* by said court. . . .

"In State, district, county, precinct or municipal offices, the certificate of nomination issued by the president or chairman of the nominating convention or chairman of the county executive committee, shall be subject to review upon allegations of fraud or illegality, by the District

Court of the county in which the contestee resides, or the judge of said court in vacation; provided, that such allegations are filed in said court within ten days after the issuance of said certificate, and when said allegations are so filed or the appeal from the decision of the executive committee is perfected, the judge of the District Court shall set same down for hearing either in term time or vacation at the earliest practical time, and a copy of said grounds of contest together with the notice of the date set for said hearing shall be prepared and issued by the clerk of the District Court and be served upon the contestee five days before the hearing before said court or judge; and the parties to said contest shall have the right to summon witnesses; and the court or judge may, if in his opinion the ends of justice require it, unlock and unseal the ballot boxes used in the precinct where fraud or illegality is charged to have been used, and examine their contents, after which they shall be sealed and delivered to the county clerk; and said court or judge shall determine said contest, and the decision of said court or judge shall be final as to all district, county, precinct or municipal offices, and a certified copy of the judgment of said court or judge shall be transmitted by the clerk thereof to the officers charged with the duty of providing the official ballot, and the name of the candidate in whose favor said judgment shall be rendered, shall be printed in the official ballot for the general election."

While the procedure provided for by this statute is not full and complete, and no express provision is made for the adoption by the court of any existing statutory or common law rules of procedure, we can not agree with the learned district judge in his conclusion that this lack of fullness in the rules of procedure provided in the statute is such as to render the statute void.

We do not regard the case of Odell v. Wharton, 87 Texas, 173, cited and relied on by respondents, and which seems to have controlled the action of the District Court, as conclusive of the question. The statute construed in that case contained no directions of any kind as to the mode of procedure, but simply provided that the contest should be conducted in "such manner as has been or may hereafter be prescribed." At the time the contest in that case was brought the only rules of procedure prescribed by law for the trial of election contests were those embraced in chapter 6 of title 34 of the Revised Statutes of 1879. This law had been declared unconstitutional by our Supreme Court in the cases of ex parte Towles, 46 Texas, 413; Williamson v. Lane, 52 Texas, 335, and ex parte Whitlow, 59 Texas, 273, and, under the well settled rule of decision, the amendment to the Constitution authorizing such legislation did not vitalize the previously enacted law. Under these conditions it is manifest that the reference in the Act construed in the Odell case to the rules of procedure theretofore prescribed was wholly ineffectual, there being then no existing constitutional statutory rules of procedure in such cases; and such contest not being a civil suit or cause, and therefore not triable under the common law or statutory rules of procedure governing

such suits, the statute attempting to confer jurisdiction upon the District Court to try such contest, without providing any rules of procedure therefor, was held ineffectual and void.

The Act under consideration in this case does provide rules of procedure. It fixes the venue of the cause of action. It fixes the time for commencing the proceedings and prescribes the essentials of contestant's pleading. It provides for service upon contestee of notice of the filing of the contest and a statement of the grounds of the contest, and of notice of the time set for the hearing, all of which are to be prepared and issued by the clerk of the District Court, and served five days before the day set for the hearing. It also provides that witnesses may be summoned (and by necessary implication may be sworn and examined), and that if it is deemed necessary to the ends of justice the court may unlock the ballot boxes and examine their contents. The only omissions in the procedure provided in this Act are the failure to prescribe rules of evidence, and to provide for the filing of pleadings by the contestee and for the amendment of the pleadings.

If this omission to prescribe rules of evidence would leave the court free to try the contest without regard to any legal rules of evidence we would not be disposed to disagree with the district judge in the opinion that the statute should be held inoperative. Under the Anglo-Saxon system of jurisprudence when a citizen is brought into court he is entitled to have his rights ascertained and determined under rules of evidence established by law, and any attempt by the Legislature to give power to any judicial tribunal to determine the rights of the citizen, without prescribing any rules which should govern in the admission of the evidence upon which such rights are established or defeated, should not be upheld by the courts. But we can not agree with respondent's counsel in the contention that there are no rules of evidence made applicable by the law to the trial of a contest of this kind. Article 2299 of our Revised Statutes is as follows: "The common law of England as now practiced and understood shall in its application to evidence be followed and practiced by the courts of this State so far as the same may not be inconsistent with this title or any other law."

This article of the statute makes the common law rules of evidence applicable in any character of case or cause of action which any court of this State is given jurisdiction to hear and determine, and under its provisions the District Court in the trial of a primary election contest under the statute before set out would be required to observe the common law rules of evidence.

We do not regard the failure to provide for the filing of an answer by the contestee and to provide for the amendment of the pleadings, such omissions in the rules of procedure as would vitiate the statute. The contestee is not required to file any written answer, and judgment can not be taken by default. The burden is upon the contestant to show the fraud or illegality charged, and unless such affirmative showing is made the court is not authorized to disturb the declared result of the

election; and it is expressly provided, "that before any advantage can be taken of the disregard or violation of any directory provision of the law it must appear that but for such disregard or violation, the result would have been different."

In a trial of this kind no rights of the contestee are invaded or jeopardized by the failure to expressly authorize him to file a written original answer or to amend his answer. We think he may do both.

In the Odell case, *supra*, there was an entire absence of rules or procedure by which the contest could be instituted or the contestee brought into court, and, as before said, we do not think the ruling in that case sustains the district judge in his conclusion that the statute in question in this case is inoperative because it fails to prescribe adequate rules of procedure.

We come now to a consideration of the question of whether the Constitution authorizes the Legislature to confer jurisdiction upon the District Court to hear and determine primary election contests.

Section 8 of article V of the Constitution, as amended in 1891, expressly confers upon the District Court jurisdiction "of contested elections," and further provides that "said court shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution, and such other jurisdiction original and appellate as may be provided by law."

It is insisted by respondents that the term "contested elections" as used in this section of the Constitution can not be construed to include primary election contests, but must be restricted to the contest of elections by which the final choice of the people for a public officer or measure is expressed. In support of this contention a number of cases from other jurisdictions are cited in which the word "elections" as used in Constitutions and statutes under construction in said cases is held not to include a primary election. The decisions in most of these cases are controlled by the context of the provisions of the Constitution or statute under construction, and the applicability of some of these opinions is greatly weakened, if not destroyed, by the fact that it does not appear that the party primary elections referred to in the opinions were statutory elections. If any of the cases cited can be held directly in point we do not feel constrained to follow them. We are of opinion that the word "elections" as used in the section of our Constitution above quoted, should be construed to include any election in which the public or a large portion thereof participates and which is held under and regulated by the statutes of of this State.

Prior to the adoption of this amendment to our Constitution it had been held by our Supreme Court in the cases before cited that an election contest being in its nature political the jurisdiction to decide such contests was not conferred by the Constitution upon the District Court, nor was the Legislature authorized under the Constitution to confer such jurisdiction upon that court. To meet these decisions the amendment to the Constitution before mentioned was adopted, and it can

not be doubted that in the adoption of this amendment the people intended to give the District Court the power or jurisdiction to hear and determine the contest of any public election held under and regulated by the general election statutes of this State.

The contest of a primary election held under the present statutes of this State authorizing and governing such elections, is in no sense more of a political or non-judicial question than the contest of a general election, and while primary elections were not authorized by law at the time the amendment to the Constitution was adopted and was not in the minds of the electors when they voted for said amendment, we think such elections are clearly included in the terms of the amendment.   Scarborough v. Eubank, 52 S. W., 569; Lytle v. Halff, 75 Texas, 134.

Such being our conclusion as to the proper construction of the clause of the Constitution giving the District Court jurisdiction of contested elections, it is unnecessary for us to determine whether the later clause in the section of the Constitution before quoted authorizes the Legislature to give the District Court jurisdiction of contests of primary elections.

The objection of respondents to the jurisdiction of this court is without merit.   Article 1000 of the Revised Statutes, authorizing the Courts of Civil Appeals to issue a writ of mandamus to compel a District Court to proceed to trial and judgment in a cause, confers original jurisdiction upon this court to issue such writ, and this jurisdiction is not affected by the fact that the cause in which such writ is applied for is not appealable to this court.

From these views it follows that the application for a writ of mandamus should be granted, and it is so ordered.

*Mandamus awarded.*