LANE v. McLEMORE.　(No. 6875.)

(Court of Civil Appeals of Texas. Galveston. Oct. 12, 1914.)

1. ELECTIONS (§ 305*)—ELECTION CONTESTS— APPEALS — APPELLATE JURISDICTION — "STATE OFFICE."

Under Rev. St. 1911, art. 3154, providing that in state, district, county, etc., offices the certificate of nomination, issued by the president or chairman of the nominating convention, or chairman of the county executive committee, shall be subject to review, upon allegations of fraud or illegality, by the district court of the county, article 3156, providing that the decision of such court or judge shall be final as to all district, county, precinct, or municipal offices. and article 3158, providing that in all contests for state offices before the district court, either party may appeal to the Court of Civil Appeals, no appeal lies to the Court of Civil Appeals in a proceeding to contest the nomination for the office of congressman at large; as a congressman, whether elected from a district or from the state at large is not a state officer, but a federal officer, and the office of congressman is not a "state office," which term does not refer to the territorial extent of the office to be filled, especially in view of article 3084, providing that on primary election day candidates for Governor and all other state offices to be chosen by a vote of the entire state, and candidates for Congress and all district offices shall be nominated at primary elections.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 317–332; Dec. Dig. § 305.*

For other definitions, see Words and Phrases, Second Series, State Office.]

2. ELECTIONS (§ 305*)—ELECTION CONTESTS— APPEALS—APPELLATE JURISDICTION—"CIVIL CASE."

The Court of Civil Appeals has no jurisdiction of an appeal in a proceeding to contest a nomination for congressman at large by reason of its general jurisdiction of appeals in civil cases tried in the district courts, since a contested election case is not a "civil case," as that term is used in conferring appellate jurisdiction upon the Courts of Civil Appeals.

[Ed. Note.—For other cases, see Elections, Cent. Dig. §§ 317–332; Dec. Dig. § 305.*

For other definitions, see Words and Phrases, First and Second Series, Civil.]

Appeal from District Court, Harris County; Norman G. Kittrell, Special Judge.

Election contest by W. P. Lane against Jeff. McLemore. From a judgment for defendant, the contestant appeals. Appeal dismissed.

Batts & Brooks, W. F. Ramsey, C. L. Black, and S. D. Ramsey, all of Austin, Stanley Boykin, of Ft. Worth, Worth Ray, of Austin, and D. E. Simmons, of Houston, for appellant. Lane, Wolters & Storey, of Houston, and Q. U. Watson, of Giddings, for appellee.

McMEANS, J. W. P. Lane, Jeff. McLemore, J. H. Davis and others were candidates for the Democratic nominations for congressman at large, there being two nominations to be made, and were voted for at the Democratic primary election held in this state on July 25, 1914. It is conceded that J. H. Davis received the highest number of votes cast for any one candidate, and that he was by the state convention held at El Paso on August 11 and 12, 1914, properly declared the nominee of the Democratic party for one of two positions. The state convention canvassed the vote cast in the primary election, and, after ascertaining the result, declared that Jeff. McLemore had received the next highest vote, and that he had thus received the Democratic nomination for congressman at large. W. P. Lane, claiming to have received a larger vote in the primary election than Jeff. McLemore, duly filed his contest before the state Democratic executive committee, which, after a hearing on August 21, 1914, sustained the decision of the convention and declared McLemore the nominee, to which Lane excepted, and gave notice of appeal to the district court of Texas having jurisdiction over the contest and of the matters therein involved.

On August 22, 1914, W. P. Lane filed in the district court of Harris county his original petition, contesting the nomination of Jeff. McLemore, and claiming that he had received a greater number of votes cast in the primary election than the contestee, sought to have the act of the convention reviewed and set aside, the true result declared, and that he be declared, by the judgment of the court, to be the nominee of the Democratic party for the office of congressman at large from this state; which suit was consolidated with the appeal taken from the action of the executive committee declaring McLemore to be the nominee. The consolidated case came on for trial before Hon. Norman G. Kittrell, special judge of the district court of Harris county, who, on September 29, 1914, rendered a decision and judgment that the plaintiff, Lane, should not recover, but that the defendant, McLemore, was the duly and legally nominated Democratic candidate for congressman at large for the state of Texas, and ordered that such judgment be certified to the proper officers charged with the duty of providing the official ballot for their observance. To this judgment the plaintiff, Lane,

excepted, and by appeal has brought the case to this court for review.

[1] We are met in limine by the contention presented by the appellee, McLemore, that this court is without jurisdiction to entertain this appeal. A careful consideration of the statutes and decided cases bearing upon the subject has lead us to the conclusion that the contention is well taken and must be sustained.

Prior to the adoption in 1891 of the amendment to article 5 of the Constitution of this state the Legislature could not confer upon the district courts authority to try contested elections. Ashford v. Goodwin, 103 Tex. 494, 131 S. W. 535, Ann. Cas. 1913A, 699. To remedy that defect, section 8 of the amendment to article 5 was adopted, in which occurs this language:

"The district court shall have original jurisdiction * * * of contested elections."

In pursuance of the authority thus conferred, the Legislature, prior to the election which gave rise to this contest, passed the following statute:

"In state, district, county, precinct or municipal offices, the certificate of nomination issued by the president or chairman of the nominating convention, or chairman of the county executive committee, shall be subject to review, upon allegations of fraud or illegality, by the district court of the county in which the contestee resides. * * *" Revised Statutes 1911, art. 3154.

This statute plainly confers upon the district court the power to hear and determine contests made by candidates for nomination to state, district, county, precinct, or municipal offices, and includes a contest between candidates for congressman at large, if such fall within any of the classes above stated.

Article 3156 of the Revised Statutes provides:

"The said court or judge (meaning the district court or judge) shall determine said contest; and the decision of said court or judge shall be final as to all district, county, precinct, or municipal offices."

Article 3158 provides:

"In all contests for state offices before the district court, exercising either its original or appellate jurisdiction, either party may appeal to the Court of Civil Appeals. * * *"

Thus it will be seen that by the express terms of the articles quoted above that in a contest for a district, county, precinct, or municipal office no appeal is allowed from the judgment of the district court, while in a contest for a state office an appeal is expressly provided for. In which category, then, does the office of congressman at large fall? If it is a district office, an appeal is denied; if a state office an appeal is allowed; while if it is neither a state nor a district office, an appeal will not lie, because of a want of legislative authority in this court to hear and determine it. For the purpose of this opinion, we shall enter only into an investigation of whether the office in question is a state office; for, if it is not, then no appeal lies to this court from the judgment of the district court. The question, Who are state officers? has often been judicially answered. Thus in volume 36, Cyc. pp. 852, 853, it is said:

"State officers are those whose duties concern the state at large, or the general public, although exercised in defined limits, and to whom are delegated the exercise of a portion of the sovereign power of the state. They are in a general sense those whose duties and powers are coextensive with the state, or are not limited to any political subdivision of the state. * * *"

And on page 854:

"The term 'state officer' has been held to be as a general rule applicable only to those superior executive officers who constitute the heads of the executive departments of the state, or such as belong to one of the three constituent branches of the state government."

In American & English Encyclopedia of Law, vol. 23, page 327, it is said:

"In a popular sense a state officer is one whose jurisdiction is coextensive with the state. In a more enlarged sense a state officer is one who receives his authority under the laws of the state and performs some of the governmental functions of the state."

The Constitution of South Dakota contains a provision to the effect that the Governor and all other state and judicial officers, except county judges, justices of the peace, and police magistrates, shall be liable to impeachment, and that all officers not liable to impeachment shall be subject to removal for certain causes in such manner as may be provided by law. A question arose before the Supreme Court of that state as to whether a member of the board of trustees of one of the educational institutions of the state was a state officer within the meaning of the Constitution, so that he was removable only by impeachment. In deciding the question in the negative the court says:

"We are of the opinion that the term 'state officer,' as used in said section, includes only such general officers as immediately belong to one of the three constituent branches of the state government." State v. Hewitt, 3 S. D. 187, 52 N. W. 878, 16 L. R. A. 413, 44 Am. St. Rep. 788.

To the same effect are State v. Smith, 6 Wash. 496, 33 Pac. 974; State v. Hocker, 39 Fla. 477, 22 South. 723, 63 Am. St. Rep. 174; State v. Spencer, 91 Mo. 206, 3 S. W. 410; State v. Dillon, 90 Mo. 229, 2 S. W. 417.

In view of the foregoing, and upon the considerations hereinafter stated, we are constrained to hold that the office of congressman at large is not a state office within the meaning of article 3158, which confers jurisdiction on this court to entertain an appeal from the judgment of the district court rendered in a contest for nomination to a state office. A congressman, whether elected from a district or from the state at large, is not a state officer, but a federal officer; he is remunerated from the federal treasury, not by the state; the office is created by the federal Constitution, and the officer's duty is to represent his constituency

in the federal Congress and to there give consideration to legislation coming solely within the jurisdiction of the federal government. Viewed from every angle, we are unable to perceive any just grounds upon which he could base a claim to be a state officer.

But appellant, Lane, contends that:

"The language 'for any state office' means not necessarily the character of office to be voted for, as to whether it means one aspiring to a state office, or to one seeking a term as congressman from the state at large, but the word 'state,' as there used, has reference to the territorial extent of the office to be filled; that is to say, whether it is an office for which the whole state votes, or merely some district or county within the state."

If the ordinary rules of statutory construction did not forbid the construction here contended for, we think a full answer thereto is found in the statute itself. In addition to the article above quoted, article 3084 provides:

"On primary election day in 1912, and every two years thereafter, candidates for Governor and for all other state offices to be chosen by a vote of the entire state, and candidates for Congress and all district offices to be chosen by vote of any district comprising more than one county, to be nominated by each organized political party * * * shall, together with all candidates for offices to be filled by the voters of a county or a portion of a county, be nominated in primary elections by the qualified voters of such party."

We think it is too clear to require extended argument that this statute places state offices and the office of congressman, whether for a district or for the state at large, in different classes, and forbids the construction contended for by appellant as above stated.

In State v. Dillon, supra, the following language is used:

"It is a familiar rule of construction, requiring no citation of authorities to establish, that words, either in statutes or organic law, are to be understood according to their usual and ordinary meaning, and as we are of the opinion that the words 'state officer,' as used in the Constitution, are to be understood as having been used by the framers of the Constitution in their popular sense, and were intended only to refer to such officers whose official duties and functions are coextensive with the boundaries of the state, and were never intended to include such officers as constables or justices of the peace, whose official functions are to be performed in the townships in which they are elected, * * * nor to sheriffs, * * * whose functions are confined to their respective counties, and are commonly known and called county officers."

[2] Nor has this court jurisdiction of this appeal by reason of its general jurisdiction of appeals from all civil cases tried in the district courts. A contested election case is not a "civil case," as that term is used in the statute conferring appellate jurisdiction in civil cases upon the Courts of Civil Appeals. Gibson v. Templeton, 62 Tex. 555.

It follows from what we have said that, in our opinion, this court has not jurisdiction to entertain this appeal, and that therefore the appeal must be dismissed, and it has been so ordered.