HAMILTON v. DAVIS, Tax Collector. *
(No. 6215.)

(Court of Civil Appeals of Texas. Austin. Dec.
13, 1919. On Motion for Rehearing,
Jan. 7, 1920.)

1. CONSTITUTIONAL LAW 12—AMENDMENT
TO BE CONSTRUED IN VIEW OF EVIL TO BE
CURED.

A rule of construction applicable to constitutional amendments is that in ascertaining the intention of an amendment the court should look to the evil to be cured and the remedy sought to be applied.

2. CONSTITUTIONAL LAW 48—UNCONSTITUTIONALITY OF STATUTE MUST APPEAR BEYOND REASONABLE DOUBT.

An act of the Legislature will not be held to be unconstitutional unless its invalidity is apparent beyond a reasonable doubt.

3. ELECTIONS 18—ACT PERMITTING FEMALES TO VOTE AT PRIMARIES NOT UNCONSTITUTIONAL.

An "election," as the term is used in Const. art. 6, § 2, stating the qualifications of voters at an election, does not include primary elections, which have been held to be elections within the meaning of article 5, § 8, giving the district court jurisdiction of contested elections, so that the Woman Suffrage Act (Acts 35th Leg. 4th Called Sess. [1918] c. 34) permitting females possessing the qualifications of electors as defined by the Constitution, except as to sex, to vote in primary elections, is not invalid on that account.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Election.]

4. INJUNCTION 1—EQUITABLE CHARACTER OF REMEDY TO PREVENT IRREPARABLE INJURY.

Injunction is an equitable relief granted by a court of chancery to prevent irreparable injury as the consequence of an unlawful act for which common-law courts offer no relief, or at least no adequate relief.

5. INJUNCTION 85(2)—REMEDY NOT AVAILABLE TO PRIMARY CANDIDATE COMPLAINING OF UNCONSTITUTIONALITY OF FEMALE SUFFRAGE ACT.

Despite Rev. St. 1911, art. 4643, subd. 1, in view of articles 3154–3158, a candidate for a party nomination to the state Legislature at a primary election has a complete remedy to contest the election on account of illegal votes of females being cast against him under the Woman Suffrage Act (Acts 35th Leg. 4th Called Sess. [1918] c. 34) and cannot enjoin the tax collector from issuing poll tax receipts to women entitling them to vote at the primary, even though the suffrage act is unconstitutional; the election cannot be contested before it is held by preventing the collector from discharging a political function required of him by law.

Appeal from District Court, McLennan County; Richard I. Munroe, Judge.

Suit by Tom M. Hamilton against Lee R. Davis, Tax Collector. From judgment for defendant, plaintiff appeals. Affirmed.

Walton D. Taylor, R. H. Rogers, Jno. B. McNamara, and J. A. Kibler, all of Waco, for appellant.

Frank B. Tirey, Co. Atty., W. E. Spell, S. Maude Ryan, and Gallagher & McCullough, all of Waco, and C. M. Cureton, Atty. Gen., and W. J. Townsend, Asst. Atty. Gen., for appellee.

Statement of the Case.

JENKINS, J. Appellant brought this suit to enjoin the tax collector of McLennan county from issuing poll tax receipts to women. He alleges that he is a duly qualified voter and taxpayer in McLennan county; that he is a member of the Democratic party in this state, and a candidate for the Legislature in the district composed of said county, at the Democratic primary to be held in July, 1920; that there are 5,000 female citizens of McLennan county not disqualified to vote, except by reason of their sex, who will obtain poll tax receipts from appellee if he is not restrained from issuing the same, and who, by reason of the fact that appellant has actively participated in the campaign against female suffrage, and the further fact that one of his opponents is an active supporter of female suffrage, will vote against him in said primary if permitted to vote, and thereby defeat his nomination, but that otherwise he will receive the nomination for the Legislature at said primary. He alleges that appellee is issuing poll tax receipts to said female citizens under and by virtue of an act of the Thirty-Fifth Legislature (Acts 35th Leg. [4th Called Sess.] c. 34) commonly known as the "Woman Suffrage Act," and, if not restrained, will continue so to do; that said act is unconstitutional and void.

The act complained of permits female citizens who possess the qualifications of electors, as defined by the Constitution of this state, except as to sex, to vote in primary elections. One of such qualifications is that the party offering to vote must have paid his poll tax.

The trial court sustained a general demurrer to appellant's petition, and this is assigned as error.

Opinion.

[1-3] It is the contention of appellant that "election," as that term is used in section 2, art. 6, of the Constitution of this state, in which the qualifications of voters at "an election" are stated, includes primary elections. With this we do not agree.

A primary election has been held by the Supreme Court of this state to be "an election" within the meaning of section 8, art. 5, of the Constitution of this state. Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699; Anderson v. Ashe, 62 Tex. Civ. App. 262, 130 S. W. 1044;

Lane v. McLemore, 169 S. W. 1073. On the other hand, the necessary effect of the decision in Waples v. Marrast, 108 Tex. 5, 184 S. W. 181, L. R. A. 1917A, 253, is that a primary election is not an election as applied to the issue in that case.

When these decisions are examined in the light of their facts, it will be seen that there is no conflict between them. They involved the construction of different articles of the Constitution, and neither of them involved the construction of section 2, art. 6, of the Constitution, which is the article involved in the instant case. Articles in the Constitutions of other states similar to this have been passed upon many times in numerous jurisdictions, and no court, so far as we are aware, except the Supreme Court of California, has held that such a provision in a Constitution applies to a primary election.

A word may have different meanings, and its particular meaning often depends upon the connection in which it is used. Thus in Ashford v. Goodwin, in Anderson v. Ashe, and in Lane v. McLemore, supra, the issue was as to the jurisdiction of the district court to try a "contested election" growing out of a primary election. The power of a district court to try a contested election case was given by an amendment to section 8, art. 5, of the Constitution, defining the jurisdiction of district courts. Prior to such amendment it had been held that no court had jurisdiction in such cases, for the reason that the matter involved was not judicial, but was political.

One of the rules of construction applicable to amendments of Constitutions as well as of statutes is that in ascertaining the intention of the amendment we should look to the evil to be cured and the remedy sought to be applied. The evil sought to be cured by the amendment above referred to was the unfairness, fraud, and corruption often prevailing in elections. The remedy sought to be applied was to have such matters inquired into by the district court.

The Legislature of this state had passed a compulsory primary election law, and provided for contests arising thereunder by the district court. The necessity of having such elections fairly conducted is apparent. This could be secured only by giving some court power to try contests in such elections. That power the Legislature conferred upon district courts. Such being the purpose of the act, and the public necessity for the same, the Supreme Court, in Ashford v. Goodwin, supra, very properly, as we think, applied a liberal construction to the constitutional amendment, and held that the term "contested elections" was broad enough to include primary elections.

But a different rule of construction should be applied when the issue is not the prevention of fraud and corruption, but the power of the Legislature to do that which, in the absence of a constitutional inhibition, it clearly had the right to do, namely, to abolish the distinction of sex in the exercise of the right of suffrage, especially when this power is sought to be denied by giving a meaning to a word which was not in the minds of the people when they adopted the Constitution, and, applying it to a condition which has since arisen. In the one case the Constitution should be liberally construed to effect the reform sought, though the particular application was not contemplated when the amendment was adopted; in the other case the construction should be strict, in order not to thwart the effort of the Legislature to extend a valuable privilege to a worthy class of citizens.

The word "election," as commonly understood, means the choice of a person or persons to fill an office, or the adoption or rejection of some proposition relating to governmental affairs, such as an amendment to the Constitution, the issuance of bonds, etc. In the absence of some good reason to the contrary, it must be presumed that this was the sense in which it was used in section 2, art. 6, of the Constitution. No sufficient reason is found in the fact that the Supreme Court of this state gave it more extended construction, as it was used in an amendment to another section of the Constitution, in order to effect the evident purpose of such amendment. "It does not follow, either logically or grammatically, that because a word is found in one sense in one connection in a Constitution, therefore the same sense is to be adopted in every other connection in which it occurs." Story on Con. § 454. Notwithstanding the decision in Ashford v. Goodwin and the other cases which followed it, which is accepted as correct, and notwithstanding that primary elections, which were unknown in our state when our Constitution was adopted, are now as common as general elections, no one would now understand by the use of the word "election" that a primary election was meant.

In Ashford v. Goodwin, Mr. Justice Brown places stress on the rule of construction universally recognized that an act of the Legislature will not be held to be unconstitutional "unless its invalidity be apparent beyond a reasonable doubt." This rule is binding on us in the instant case.

Waples v. Marrast, supra, arose upon the question as to whether the Legislature could provide for the payment out of the general revenue raised by taxation of 'the expenses of a party primary. It was there held that it could not. This decision, the soundness of which has not been questioned, as far as we are aware, is necessarily erroneous, if there is no difference between a general election or a special election for constitutional purposes and a primary election to nominate

candidates. There is a difference, as is pointed out by the learned Chief Justice, with his usual clearness and logic. Chief Justice Phillips in this case says:

"General elections are essential to the public welfare and are distinctly related to the discharge of an important governmental duty, because it is only by their means that the organic law may be amended and in the elective offices public officials be supplied for the various administrative agencies."

Such being the fact, no one would question the power of the Legislature to provide for the payment of the expense of such elections out of the general revenue. Why does not the Legislature possess such power as to primary elections? Because, as said by Chief Justice Phillips:

"The purpose of their [political parties] primary election is merely to enable them to furnish their nominees as candidates for the popular suffrage. In the interest of fair methods and a fair expression by their members of their preference in the selection of their nominees, the state may regulate such elections by proper laws; as it has done in our general primary law."

The term "primary election" means:

"An election held by the members of an organized political party for the purpose of nominating the candidates of such party to be voted for at a general or special election, or to nominate the county executive officers of a party." R. S. art. 3085.

"The purpose of their primary elections is merely to enable" political parties "to furnish their nominees as candidates for the popular suffrage." Waples v. Marrast, supra.

"It is simply a substitute for the caucus or convention." Ledgerwood v. Pitts, 122 Tenn. 587, 125 S. W. 1039.

"There having been no constitutional limitation upon the power of the party with respect to the qualifications of its members, it would seem that, if the Legislature has power to legislate on the subject at all, its power also is without limitation, so far as concerns the rights of the individual elector." Morrow v. Wipf, 22 S. D. 146, 115 N. W. 1121.

The right of the Legislature to legislate as to primary elections has never been denied. A primary differs from a party convention, not as to the end sought, but only as to the means used.

"A primary is not an election in the sense of the common law." State v. Woodruff, 68 N. J. Law, 89, 52 Atl. 294.

"We do not think the sections of the Constitution providing the qualifications of electors applicable to the primary election provided for by this statute." State v. Nichols, 50 Wash. 522, 97 Pac. 731.

"That section of the Constitution has no reference to primary elections, but applies only to general elections." Montgomery v. Chelf, 118 Ky. 766, 82 S. W. 388.

"The safeguards of the Constitution apply exclusively to the final election when the officer

is chosen in the mode required by the Constitution." Ledgerwood v. Pitts, supra.

It was held in Baer v. Gore, 79 W. Va. 50, 90 S. E. 530, L. R. A. 1917B, 728, that requiring a voter in a primary election to state on oath to what political party he belonged did not violate the provision of the Constitution of that state (West Virginia), that "no * * * political test oath shall be required as a prerequisite or qualification to vote," nor that provision of the Constitution which declared that, with certain negative exceptions, all male citizens "shall be entitled to vote at all elections held within the counties in which they respectively reside."

For additional authorities in line with the excerpts above set out, see State v. Flaherty, 23 N. D. 313, 136 N. W. 76, 41 L. R. A. (N. S.) 132; Hanna v. Young, 84 Md. 179, 35 Atl. 674, 34 L. R. A. 55, 57 Am: St. Rep. 396; Hager v. Robinson, 154 Ky. 489, 157 S. W. 1142; State v. Johnson, 87 Minn. 221, 9 N. W. 604, 840; Commonwealth v. Wells, 110 Pa. 463, 1 Atl. 310; Gray v. Seitz, 162 Ind. 1, 69 N. E. 456; People v. Cavanaugh, 112 Cal. 674, 44 Pac. 1057; State v. Blaisdell, 18 N. D. 55, 118 N. W. 141, 24 L. R. A. (N. S.) 465, 138 Am. St. Rep. 741; Dooley v. Jackson, 104 Mo. App. 21, 78 S. W. 330; Ritter v. Douglass, 32 Nev. 400, 109 Pac. 444. Many other cases to the same effect might be cited.

As was said in Morris v. Wipf, supra:

"Undoubtedly the qualifications of an elector as defined by the Constitution, for the purposes contemplated by its provisions relating to the elective franchise, are exclusive and conclusive."

For such purpose the Legislature can neither increase nor diminish them. Solon v. State, 54 Tex. Cr. R. 261, 114 S. W. 349-353. Qualifications necessary to entitle an elector to vote at "an election," or "at any election," similar to those contained in section 2, art. 6, of the Constitution of this state, are found in the Constitution of every state in the Union. "Apply the constitutional definition of elector, and hold that by virtue of being an elector he shall be 'deemed a qualified elector at such election,' and our whole primary system must fall." State v. Flaherty, supra, 23 N. D. 324, 136 N. W. 80, 41 L. R. A. (N. S.) 132. This is true of the Texas primary law and of all other primary laws, for they all require a qualification not required by any state Constitution, namely, membership in the political party holding the election. "In nearly every state of the Union such a law has been adopted, and the assaults upon it have been repulsed everywhere except in California alone." Labauve v. Michel, 121 La. 394, 46 South. 436.

No efficient primary election law could be enacted without the requirement of party

affiliation as a prerequisite to vote therein; for, as was said in Labauve v. Michel, supra:

"It is the very essence of a primary that none should have the right to participate in it but those who are in sympathy with the ideas of the political party by which it is being held. Otherwise the party holding the primary would be at the mercy of its enemies, who could participate for the purpose of its destruction, by capturing its machinery or foisting upon it obnoxious candidates or doctrines."

If Legislatures may require qualifications to vote in primary elections not required by the section of a Constitution defining the qualifications of electors in "an election" or in "any election," it is because a primary is not "an election" within the meaning of such section, though it may be within the meaning of other sections. If a Legislature may add to the constitutional qualifications of an elector, as a prerequisite to participation in a primary election, it may take from such qualifications that of sex, as was done in the statute here under consideration.

In Scown v. Czarnecki, 264 Ill. 305, 106 N. E. 276, L. R. A. 1915B, 247, Ann. Cas. 1915A, 772, the court said:

"The qualification of electors at such elections [such as are required by the Constitution] are fixed, * * * and the Legislature cannot change them. Other elections, however, provided for by statute, and not by the Constitution, are wholly within the control of the Legislature."

This decision was but a reiteration of the doctrine previously announced by the Supreme Court of Illinois in Plummer v. Yost, 144 Ill. 68, 33 N. E. 191, 19 L. R. A. 110, Ackerman v. Haenck, 147 Ill. 514, 35 N. E. 381, Dorsey v. Brigham, 177 Ill. 250, 52 N. E. 303, 42 L. R. A. 809, 69 Am. St. Rep. 228, Collier v. Anlicker, 189 Ill. 34, 59 N. E. 615, and Bloome v. Hograeff, 193 Ill. 195, 61 N. E. 1071. It was applied in upholding the right of women to vote for members of local school boards, such officers not being mentioned in the Constitution of that state, which required the Legislature to adopt "a system of free schools." To the same effect are the decisions in Belles v. Burr, 76 Mich. 1, 43 N. W. 24, Wheeler v. Brady, 15 Kan. 26, State v. Monahan, 72 Kan. 492, 84 Pac. 130, 115 Am. St. Rep. 224, 7 Ann. Cas. 661, Harris v. Burr, 32 Or. 348, 52 Pac. 17, 39 L. R. A. 768, State v. Board of Elections, 9 Ohio Cir. Ct. R. 134, Olive v. School District, 86 Neb. 135, 125 N. W. 141, 27 L. R. A. (N. S.) 522, State v. Hanson, 80 Neb. 724, 115 N. W. 294, Hall v. Madison, 128 Wis. 132, 107 N. W. 31, Richardson v. Young, 122 Tenn. 476, 125 S. W. 664, Vertrees v. Board of Elections (Tenn.) 214 S. W. 737, Hanna v. Young, 84 Md. 179, 35 Atl. 674, 34 L. R. A. 55, 57 Am. St. Rep. 396, Scown v. Czarnecki et al., 264 Ill. 305, 106 N. E. 276, L.

R. A. 1915B, 247, Ann. Cas. 1915A, 772, State v. Dillon, 32 Fla. 545, 14 South. 383, 22 L. R. A. 124, and Spitzer v. Fulton, 172 N. Y. 285, 64 N. E. 957, 92 Am. St. Rep. 736.

If the Legislature can prescribe the qualifications of voters in an election for officers to fill offices created by it, but not by the Constitution, it can assuredly do so in primary elections, which are solely the creatures of the statute, held, not for the purpose of choosing officers, but to nominate the candidates of political parties to be voted for at an election to choose the officers provided for by the Constitution or by statute.

There is another issue which might be presented under the facts of this case, and that is: As section 1, art. 6, of the Constitution in terms denies the right of suffrage to certain classes of persons therein specified, thereby depriving the Legislature of the power to grant the right of suffrage to the persons so designated, and as females are not included therein, should section 2 be so construed as to deprive the Legislature of the power which otherwise it possessed to extend the right of suffrage to females in all elections? As this issue is not presented in the briefs, we will not pass upon nor discuss it.

Even though we should be in error in holding that the act permitting women to vote in primary elections is constitutional, it does not follow that the judgment of the trial court herein should be reversed.

[4] Injunction is an equitable relief granted by a court of chancery to prevent irreparable injury as the consequence of a wrongful act for which common-law courts offered no relief, or at least no adequate relief. The decision in Gilmore v. Waples, 108 Tex. 167, 188 S. W. 1037, has no application to the facts of this case. There it was sought to prevent the executive committee from doing an act plainly forbidden by the statute, which it was admitted in the agreed statement of facts would result in preventing Gilmore from becoming a candidate at the ensuing general election, by rendering such candidacy hopeless. He could not have successfully contested the election, for it was admitted that, if his opponent's name was placed on the ticket as the Democratic nominee, he would receive a majority of the legal votes cast at such election. Hence it appeared from the admitted facts that Gilmore had no remedy except that of injunction.

[5] In the instant case appellant has a complete remedy provided by statute for the only injury which he can suffer by illegal votes being cast against him. That remedy is by contesting the election. R. S. arts. 3154 to 3158, inclusive. This, in effect, is an effort to contest an election before it is held by preventing the appellee from discharging a political function required of him by law. This the law will not permit. City

of Dallas v. Electric Ry. Co., 105 Tex. 337, 148 S. W. 292; Robinson v. Wingate, 36 Tex. Civ. App. 65, 80 S. W. 1067; Robinson v. Wingate, 98 Tex. 267, 83 S. W. 182; League v. Road Dist., 187 S. W. 1014; Watson v. Cochran, 171 S. W. 1067; Fuller v. McHaney, 192 S. W. 1160; Merrill v. Savage, 49 Tex. Civ. App. 292, 109 S. W. 408; Townsen v. Mersfelder, 49 Tex. Civ. App. 289, 109 S. W. 420; Lyle v. Longan, 162 S. W. 1156; Waterworks Co. v. New Orleans, 164 U. S. 481, 17 Sup. Ct. 161, 41 L. Ed. 518; Green v. Mills, 69 Fed. 852, 16 C. .C. A. 516, 30 L. R. A. 90; Fletcher v. Tuttle, 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220.

It will be seen from an examination of the foregoing authorities that it is immaterial that the political function sought to be restrained is alleged to arise under a void act of the Legislature. Courts will not take cognizance of such issue until it is alleged that the function is being exercised to the invasion or destruction of a property or civil right of the complainant. A civil right of an individual citizen, such as to vote, run for or hold office, is a different thing from a political function to be discharged by virtue of an office.

Appellant contends that he is entitled to an injunction herein by force of subdivision 1, art. 4643, of the Revised Statutes, which provides that a writ of injunction may be granted "Where it shall appear that the party applying for such writ is entitled to the relief demanded, and such relief or any part thereof requires the restraint of some act prejudicial to the applicant."

Let us analyze this subdivision of the statute as applicable to the allegations in appellant's petition. Is he entitled to "the relief demanded"? Not unless some property or civil right of his is threatened by the commission of the act complained of. Certainly no property right is involved. What civil rights involved herein does he appear to have? The right to run for office, and to be declared the nominee if he receives a plurality of the legal votes cast for candidates for the Legislature in the primary election. Neither of these rights would be interfered with by the issuance of poll tax receipts to female citizens, even though it should be conceded that such female citizens will not be legal voters in such primary. The real and only substantial relief which appellant seeks is to avoid being defeated in the primary by illegal votes. This relief does not "require the restraint of any act (on the part of appellee) prejudicial to the applicant." It is available to him if any illegal votes are cast against him; and the act of appellee in issuing poll tax receipts to women will in no wise abridge his right to such relief, for it must be presumed that, if he contests the

election, the court will render judgment according to law.

For each of the reasons stated herein, we hold that the trial court did not err in sustaining the general demurrer to appellant's petition. We accordingly affirm the judgment of the court below herein.

Affirmed.

### On Motion for Rehearing.

The parties hereto, being anxious that a petition for writ of error should be presented to the Supreme Court at an early date, have requested us to pass on this motion on the day of its submission. For this reason we have carefully examined the motion in advance of its submission, and, being of the opinion that we have correctly decided the case, the motion for rehearing is overruled.

Motion overruled.